NEBRASKA WHEAT GROWERS ASSOCIATION, APPELLEE, V.
C. C. NORQUEST ET AL., APPELLANTS.

FILED JULY 1, 1925.   No. 24564.

1. **Monopolies:** COOPERATIVE WHEAT GROWERS ASSOCIATION. A nonprofit, cooperative association, which has for its purpose the orderly marketing of the wheat of its members, and which does not control prices, restrain trade, or prevent competition, as in this case, does not constitute an unlawful combination.

2. **Injunction:** REMEDY AT LAW. The scope and purpose of plaintiff association considered, and *held*, that the liquidated damages provided for by the contract do not afford an adequate remedy at law.

3. **Commerce:** FOREIGN CORPORATIONS: FILING OF CERTIFICATE. A foreign corporation engaged in interstate commerce is not required, under section 634, Comp. St. 1922, to file a certificate before doing interstate business within the state.

APPEAL from the district court for York county: LOVEL S. HASTINGS, JUDGE. *Affirmed.*

*J. H. Grosvenor,* for appellants.

*Corcoran & Sprague* and *Bernard McNeny,* contra.

*Butler & James* and *J. F. Ratcliff, amici curiæ.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMPSON and EVANS, JJ.

THOMPSON, J.

The Nebraska Wheat Growers Association, appellee, brought this suit in the district court for York county against defendants, appellants, members of the association, to restrain them from selling 854 bushels of wheat grown by them in 1924 to others than plaintiff, alleging, in substance, that it is a Kansas corporation, organized for the purpose of handling wheat of its contractees, and doing business in Nebraska; that defendants raised 854 bushels of wheat in 1924, which they refuse to sell to plaintiff under the contract between the parties, dated March 26, 1921, extending for five years, which is of the standard form used by such associations, and which is made a part of the petition; that defendants have sold 50 bushels of such wheat to others; that plaintiff is a nonprofit corporation, without capital stock, formed for the purpose of handling wheat cooperatively and collectively, without any pecuniary profit to plaintiff, with about 2,800 members, each of whom entered into such contract; that plaintiff has hired employees and expended large sums of money in expectation of receiving defendants' wheat; that a failure of the members to sell wheat as agreed will defeat the purpose for which plaintiff was organized, as well as the purpose of the contract, and damage plaintiff and each member thereof. It then prays that defendants be enjoined from withholding or disposing of their wheat in any other manner than that provided for in the contract, and $12.50 damages for the 50 bushels sold in violation of it.

Defendants for answer, in substance, deny any knowledge as to plaintiff's legal status in Kansas, and allege that plaintiff, if incorporated at all, is a foreign corporation, seeking to carry on business in Nebraska without first having obtained the statutory certificate; that the contract is in violation of law, is unconscionable, inequitable, and oppressive, and defendants renounce it and demand rescission thereof; that plaintiff has an adequate remedy at law. A denial is then interposed to all allegations not admitted. Plaintiff filed a reply in the nature of a general denial.

. The case was submitted to the court upon an agreed statement of facts, the substance of which is as follows: Plaintiff is, and was, a corporation organized under the laws of Kansas at the time of the contract; the statutory certificate was not filed in Nebraska until three years later; the parties entered into the contract referred to in the pleadings; defendants raised 854 bushels of wheat in 1924, and refuse to sell and deliver such wheat, less the amount they may retain under the contract, to plaintiff, although requested to do so; that defendants have sold 50 bushels of such wheat to others than plaintiff, and intend to, and will, sell the remainder to others unless prevented; that 2,700 have become members of plaintiff and entered into agreements identical with the one herein; that plaintiff has hired employees and spent large sums of money in expectation of selling defendants' wheat according to the contract; that 25 cents a bushel is a reasonable amount for plaintiff's damage for the wheat sold; that defendants marketed their wheat with plaintiff under the contract for the years 1922 and 1923, and received whatever benefits arose therefrom; that exhibit 2 is a correct copy of plaintiff's by-laws, and exhibit 3 is a copy of its articles of incorporation filed with the secretary of state.

The court found for plaintiff as prayed. Motion for a new trial was overruled. Defendants appeal.

The challenge to the judgment brings us to a consideration (1) of the effect of plaintiff's failure to file articles of incorporation in Nebraska until after this contract was entered into. (2) Does the contract provide plaintiff with an adequate remedy at law by way of liquidated damages? (3) Does such contract contravene sections 3420 and 3421, Comp. St. 1922, or the provisions of the common law applicable?

To quote from the articles of incorporation or by-laws of plaintiff, or the contract, would extend this opinion to an unreasonable length. It is sufficient to say that the parties admit that these are the same as were considered in the cases hereinafter cited construing them, each being in the

standard form used by such associations in the different states.

In harmony with their importance to the case, we shall consider the above questions in their inverse order. We are not unmindful of the evil sought to be avoided at common law by congress in enacting anti-trust laws, and by our legislature in enacting the above statutes, to wit, combinations in restraint of trade in the hands of individuals. However, as we view the contract in question, its purpose is not to retard, but to stimulate, trade, by intelligent and efficient management by the few in close touch with the demand for wheat, considered in connection with the mode and distance of its transportation, and its impelling enticement to buyers by reason of the quantity controlled by those in charge. It is organized for mutual help, is without capital stock, is not conducted for profit, but is a simple, businesslike scheme of those engaged in wheat growing to advantageously handle and market their product, and this without encroachment upon the rights of others. That it is without the evil aimed at by antitrust laws is proved by its being open to all, its profits, if any, divided without preference, and there being nothing within its scope or procedure which tends to control prices, restrain trade, or prevent competition. Thus, we conclude that this contract does not contravene either of the above-mentioned statutes or the common law. In this conclusion we are sustained by the following cases deciding similar questions both as to law and fact: *Kansas Wheat Growers Ass'n v. Schulte*, 113 Kan. 672; *Dark Tobacco Growers Cooperative Ass'n v. Mason*, 150 Tenn. 228; *Hollingsworth v. Texas Hay Ass'n*, 246 S. W. (Tex. Civ. App.) 1068; *Tobacco Growers Cooperative Ass'n v. Jones*, 185 N. Car. 265; *Oregon Growers Cooperative Ass'n v. Lentz*, 107 Or. 561. For the rule at common law see opinion in *Standard Oil Co. v. United States*, 221 U. S. 1.

As to the second question, we are of the opinion that, when the scope and purpose of the plaintiff association is considered, the liquidated damages provided for by the con-

tract do not afford plaintiff an adequate remedy at law.· As is well said in *Kansas Wheat Growers Ass'n v. Schulte, supra:*

"This association was organized for the sole purpose of marketing the wheat raised by its members, and performing such functions as are incidental thereto. From the very nature of things it must have the wheat or it cannot exist. It has no power to buy wheat, hence it cannot go into the open market and purchase wheat to fill its contracts of sale and sustain its existence or recoup its loss, if the members fail to deliver. Even the payment of damages of 25 cents a bushel, stipulated to be paid by a member for each bushel he produces and sells elsewhere, would not sustain the association and enable it to do the business for which it is incorporated. Hence, as a practical matter, it is of little consequence that the member is solvent and able to respond in damages. If the association received damages from all, · or a substantial portion, of its members, it would cease as a going concern, or be so seriously handicapped as to destroy its usefulness. Wheat is the only commodity the association can use as a going concern. All it can do with money is to pay its expenses and disburse the balance among its members. It necessarily follows that there is no adequate remedy at law. The only adequate remedy is injunction, preventing the member from selling to others, and thus forcing the delivery of the wheat to the association."

This succinctly states the facts under consideration, as well as the law applicable.

As to the remaining proposition: We must determine whether plaintiff comes within the prohibition of section 634, Comp. St. 1922, requiring a foreign corporation to file its certificate with the secretary of state before it is authorized to engage in· any kind of business in the state. Corporations organized for the purpose and doing business as shown by this record are engaged in interstate commerce, and, as such, are not required to file the certificate called for by section 634, *supra,* before doing business in this state. *Traphagen v. Lindsay,* 95 Neb. 823. We conclude

.that this is the proper interpretation of the clause in such section, which reads: "Except such corporations engaged in interstate commerce as common carriers;" the words "common carriers" as used being in a general sense, and not intended to limit such words to those engaged in actual transportation, but to include, as well, those engaged in a business partaking thereof, as plaintiff herein. To hold otherwise would be to run counter to the provisions of the Constitution of the United States, which lodges in congress the sole power to regulate interstate commerce.

In the articles of incorporation, the directors are impressed with the duty of doing everything necessary to enhance the purpose of the corporation anywhere throughout the world, and, in the contract, plaintiff is authorized to sell the wheat to any agency in other states, or to millers or exporters. These provisions, taken with the entire record, bring this question clearly within the very recent decision of the United States supreme court in *Shafer v. Farmers Grain Co.*, —— U. S. ——, 45 Sup. Ct. Rep. 481, wherein it is said: "Buying for shipment, and shipping, to markets in other states, when conducted as before shown, constitutes interstate commerce; the buying being as much a part of it as the shipping."

For the foregoing reasons, it is considered that the judgment of the district court is in all things right, and should be, and hereby is,

AFFIRMED.

Note—See Monopolies, 27 Cyc. 902.