DALE A. THOMAS, APPELLANT, V. MARVIN E. JEWELL & COMPANY,
A PARTNERSHIP, APPELLEE.

440 N.W.2d 437

Filed May 26, 1989.    No. 87-258.

· James M. Bausch and David A. Barron, of Cline, Williams, Wright, Johnson & Oldfather, for appellant.

Rodney M. Confer, of Knudsen, Berkheimer, Richardson & Endacott, for appellee.

BOSLAUGH, WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WITTHOFF, D.J.

WITTHOFF, D.J.

Dale A. Thomas filed a petition in the district court for Lancaster County seeking an accounting from his former partners in an accounting firm, Marvin E. Jewell & Company

(Jewell & Co.). Jewell & Co. counterclaimed and sought damages resulting from Thomas' alleged wrongful dissolution of the partnership. At trial, Jewell & Co. amended its counterclaim to include a cause of action on a promissory note.

The district court found Thomas' accounting action was barred by the "unclean hands" doctrine, and awarded Jewell & Co. $264,095 on its counterclaim for wrongful dissolution. Jewell & Co. was also awarded $219,998 plus interest on its Union Bank and Trust Company note claim.

Thomas timely appealed, claiming the district court erred (1) in holding Thomas wrongfully dissolved the partnership, (2) in determining Thomas' entitlement to his accrual capital account in Jewell & Co., (3) in applying the unclean hands doctrine to bar Thomas a recovery, (4) in awarding Jewell $219,998 plus interest on the bank note counterclaim and in not holding this claim was barred by res judicata by virtue of a prior judgment, (5) in failing to sustain Thomas' motion for a new trial, (6) in allowing Jewell & Co. to file an amended counterclaim at trial, and (7) in overruling Thomas' objection to the opinion testimony of Warren Hinze. We affirm the trial court's finding against Thomas on the note and reverse its findings regarding wrongful dissolution and Thomas' accounting action.

While the appellant brings eight assignments of error, the two major issues to address are: Is Thomas liable for wrongful dissolution of Jewell & Co., and is Jewell & Co.'s counterclaim on the note barred by res judicata?

This action is one in equity, and this court reviews the findings of the lower court de novo on the record. In an appeal of an equity action, the Supreme Court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Frenzen v. Taylor, ante* p. 41, 439 N.W.2d 473 (1989); *Hughes v. Enterprise Irrigation Dist.,* 226 Neb. 230, 410 N.W.2d 494 (1987).

In 1963, Marvin E. Jewell (Jewell) founded defendant-appellee, Jewell & Co., a partnership of certified

public accountants. Dennis R. Baumert became a partner in 1965; other partners joined and left the firm between 1963 and 1977. Plaintiff-appellant, Thomas, began his employment with the firm in 1969 and became a partner effective January 1, 1977. In 1980, Ronald Culwell became a partner, and Robert C. McChesney became a full partner in 1981.

When Thomas became a partner, he paid $90,000 for his 10 percent interest. Of this amount, $8,656 was paid to the partnership. The balance of $81,344 was paid 60 percent to Jewell ($48,807) and 40 percent to Baumert ($32,537). To finance his buy-in, Thomas borrowed the $90,000 from Union Bank. At the same time he also renewed an older note for $25,000, making the new note $115,000.

When Thomas became a partner, the partners developed a formula for distribution of partnership income. Each partner was assigned a target "salary," determined yearly based upon the capital ownership and experience. The partners were paid a biweekly draw based on this "salary," which was charged to their drawing account. Excess cash, when available, was paid according to the target "salaries" as well.

Final distribution of the partnership income was made after the tax return for each year was completed. Any income which exceeded the amount for the target "salaries" was distributed according to capital ownership. The partners did not discuss allocation in the event the partnership income was less than the assigned "salaries."

Jewell prepared the firm's tax returns for the years 1977 and 1978 and divided the income according to the agreed formula. In the years 1979, 1980, and 1981, Thomas prepared the partnership tax returns. In 1980 and 1981, the profit level of Jewell & Co. was not enough to meet the target "salaries" for that year. As noted above, there was no agreement to deal with this contingency. Thomas assigned the shortfall according to capital ownership in the firm. Although no other partner agreed to this method, the returns were signed by Jewell, and the IRS schedules K-1 were given to each partner. In 1980, this method of allocation resulted in an income for Thomas, with a 10 percent share, about the same as that of Baumert, a 16-year partner with a 34 percent share. In 1981, Thomas' income was

higher than that of Baumert and Jewell, a 41 percent partner, and almost twice as much as Culwell and McChesney, both 10 percent partners.

After the 1981 return was completed, all of the partners with the.exception of Thomas were dissatisfied with the way profits were distributed in the previous 2 years. A meeting was held on June 17, 1982, at which time the profit division for 1982 income was discussed. Suggestions were made to the effect that the income allocation system be revised, although the matter was left for later discussion.

In subsequent discussions among the partners, Thomas claimed he was not aware of any inequity in income distribution before the meeting of June 17, although he conceded a new system would have to be devised for the current year. While salaries were not discussed at the next partnership meeting on December 9, 1982, the partners decided 1982 income distribution would be agreed upon at a meeting to be held on January 11, 1983.

As of November 1981, Thomas owed the Union Bank $143,630. Ross Wilcox, a bank official, asked Thomas for additional collateral to secure the debt. That same month Thomas asked Jewell and Baumert if the partnership would guarantee a note, with the payments to come from Thomas' drawing account with the firm. In December the partners signed the note for $145,000 personally and as partners, with the note indicating that each signer was a maker. The note was in the name of Jewell & Co., but the entire proceeds went to Thomas and were used to retire his personal debts; no other partners received any of the money. The other partners signed the note with the understanding that Thomas would pay off both principal and interest on the note. The partners were aware Thomas' income would not permit him to pay the note in full before it was due and expected Thomas would pay the interest on any renewal notes which would be needed.

A few days after the note was signed, a discussion took place in which it was proposed that McChesney become a full partner in Jewell & Co. Thomas attended this meeting where firm liabilities and assets were discussed. The Union Bank note was described as Thomas' own debt, not a firm liability. Jewell also

stated Thomas would repay the debt. Thomas sat next to Jewell and neither objected nor made any comment.

Thomas prepared a working balance of the firm's financial condition as of December 31, 1981. He testified at trial that a note payable of the firm's would be shown as a liability on the firm's balance sheet, but he did not include the Union Bank note thusly on the working balance. The note was not included as a liability by Thomas when he prepared the firm's 1981 tax return.

This note was generally referred to by the other partners as the "Dale Thomas" note. In July 1982, Jewell had the partnership pay $3,000 in principal on the note and charge this amount to Thomas' drawing account, and informed Thomas of his actions. In December of the same year, $1,000 in principal and $23,989 in interest were paid and charged in the same manner. Thomas made no objections to the fact that his account was being charged. Thomas' income was not enough to pay the full amount that was due during the term of the note, and when the original note became due on December 1, 1982, the partnership signed a renewal note. After this renewal, the note was carried as a liability on the partnership's balance sheet.

The note was renewed each time it became due, with each renewal note bearing a variable interest rate save the last, which bears an interest rate of 10.5 percent. Between December 1, 1981, and the trial, Jewell & Co. paid $4,000 in principal and $50,802 in interest. As of June 5, 1986, the balance due on the note was $188,578, including interest. The interest was accruing at the rate of $52.95 per day.

According to Thomas, by the middle of December 1982, he had heard from three separate sources that he was to be "terminated" by January 1, 1983. Thomas decided to dissolve the partnership and form his own accounting firm. Two employees of Jewell & Co., James Watts and Michael Hershberger, agreed to join Thomas in the new venture. The three then hired Laurie Garrison, a Jewell & Co. receptionist, to work for the new firm.

During the weekend before December 20, 1982, Thomas obtained a list of Jewell & Co. clients from the firm files to select the clients that he, Watts, and Hershberger had served

and which they thought would retain the new firm. On the evening of December 19 or 20, 1982, Thomas and Watts went to the offices of Jewell & Co. after business hours and removed the files of the selected clients. Thomas did not inform the other partners of his action prior to taking the files. On December 21, 1982, Thomas told Baumert that he was leaving and dissolving the partnership.

The three new partners set up their own firm and contacted those clients whose files were in their possession. The new firm said it assumed that the clients would wish to have them continue offering services unless they were told differently. They also contacted clients whose files they did not have and said they wished to have their business. A form was included to be sent to Jewell & Co. instructing that the client's file be turned over to the new firm. Similar letters were sent by Jewell & Co. to the clients whose files were taken by Thomas. Most of the clients stayed with the firm that possessed the client file.

Following a bench trial, the court made extensive findings of fact. The court found: (1) Thomas received the full share of partnership income due him for 1982; (2) Thomas was not entitled to have his capital account credited with the amount of money paid to Jewell and Baumert for his 10 percent ownership of Jewell & Co.; (3) the partners agreed that when a partner left to establish a competing accounting firm, that partner would receive the net amount of his accrual basis capital account based on book value; and (4) the partnership acted properly in charging Thomas' drawing account for the 1982 payments of interest and principal made on the Union Bank note. The court also found Thomas was not entitled to an accounting based on the "unclean hands" doctrine. Thomas was guilty of unclean hands because of his alleged wrongful dissolution of the partnership. The court then awarded $220,000 damages for the wrongful dissolution it found on the part of Thomas and $43,890 damages to accounts that were uncollectible allegedly because of the letters sent by Thomas, which Jewell & Co. claims urged the clients to question billings sent by Jewell & Co.

Thomas alleges several errors were made in determining the damages awards. First, Thomas disputes the partners agreed on the amount to be paid a partner leaving to establish a competing

firm. At the June 17, 1982, meeting, the partners discussed provisions to be included in a written partnership agreement to be prepared in the future. Culwell's notes of the meeting reflect the items agreed upon for inclusion in the future agreement. One of the agreed-to items provided that any partner who withdrew from the firm to go into competition with Jewell & Co. as a certified public accountant would receive only the net amount of his accrual basis capital account based on book value.

Clearly, there is a dispute between the parties on this issue. Although the agreement was never formalized, the lower court found that a meeting of the minds existed as to what a partner in Thomas' position would get. There is evidence in the record to support the court's finding; therefore, we accept that the trial court accepted the version advanced by Jewell & Co.

The trial court found, under the agreement, Thomas should have received $47,591. This amount includes: (1) $18,635 (cash basis of Thomas' capital account), plus (2) $23,284 (accrual basis for 10 percent of accounts receivable on December 17, 1982) and $8,179 (10 percent of work in progress on December 17, 1982), less (3) $1,645 (10 percent of accrued expenses on December 17, 1982) and $862 (10 percent of writeoffs taken in May of 1983 for uncollectible accounts).

Second, Thomas argues several items should have been added to his capital account. According to Thomas, his account should be credited for $81,344 paid to Jewell and Baumert when Thomas bought into the partnership. There is no basis for this claim.

Of the $90,000 Thomas paid for his 10 percent interest, only $8,656 went to the partnership itself and was credited to his account; the balance was paid to Jewell and Baumert as individuals. Thomas knew the partnership records and tax returns reflected only a $8,656 contribution to capital. This is to say no more than that Thomas' payment was both to buy part of Jewell's and Baumert's interests in the firm and make a small capital contribution. The trial court did not err in refusing to add $81,344 to Thomas' capital account.

Thomas also claims his capital account was improperly charged for $23,989 in interest on the Union Bank note.

Thomas testified he agreed his capital account could be charged for payments made on the note, but he claims he only agreed to pay 8 to 10 percent in interest. The trial court is in a better position to evaluate a conflict in evidence. There is sufficient evidence in the record to support the trial court's finding, which we accept as it appears.

Thomas next claims he received $34,075 less in income than he was entitled, based on the fact that the income allocation formula was changed after Thomas left Jewell & Co. The method to be used to allocate 1982 income was to be decided at the meeting in January 1983. The partnership was dissolved prior to that meeting, and there was no agreement between the partners as to how the profit or losses for 1982 were to be divided before dissolution. Neb. Rev. Stat. § 67-318 (Reissue 1986) provides the partners rights shall be decided by agreement. Outside of "ordinary matters connected with the partnership business," all decisions which are contrary to the basic agreement or a course of dealing amounting to an agreement must be unanimous. *Smith v. Daub*, 219 Neb. 698, 365 N.W.2d 816 (1985). There was no unanimous agreement to a new formula for income distribution. Thomas is therefore entitled to have his share of the division of profits based on the same formula as used in 1980 and 1981.

Thomas argues no adjustment should have been allowed for writeoffs taken in May 1983. These adjustments were taken to clear uncollectible debt. As the trial court found, these writeoffs were properly allowed as actions that would ordinarily have been handled in the winding up process of a partnership.

Finally, Thomas argues he is entitled to 10 percent of the goodwill of Jewell & Co., which he calculates at $125,650. This figure equals 10 percent of one times Jewell & Co.'s gross receipts for 1982, which according to Thomas is the proper method of determining the value of the goodwill of an accounting firm. A partner who does not wrongfully dissolve a partnership is entitled to his share of the partnership's goodwill. Neb. Rev. Stat. § 67-338 (Reissue 1986). However, each of the two factions took the clients and whatever goodwill was available at the time of dissolution.

Thomas also claims the district court erred in denying Thomas an accounting, finding his action was barred by the "unclean hands" doctrine. Nebraska law gives a dissolving partner an absolute right to an accounting regardless of the reason for the dissolution. Neb. Rev. Stat. § 67-343 (Reissue 1986). Thus, even if the trial court correctly determined that the dissolution was wrongful, Thomas is entitled to an accounting and to his share of the partnership assets less any damages caused by his manner of dissolution.

The trial court based its finding regarding the equitable doctrine of unclean hands on *Hart v. Dietrich*, 69 Neb. 685, 96 N.W. 144 (1903). *Hart* says that a partner leaving without prior notice may be estopped by his unclean hands from recovering in an accounting action. However, *Hart* was decided long before Nebraska adopted the uniform partnership act, is in conflict with the statute, and, therefore, is no longer applicable. However, if the trial court had been correct in determining Thomas wrongfully dissolved the partnership, he would still have been held liable for damages caused by that dissolution. § 67-338.

Thomas claims the trial court erred in awarding Jewell & Co. damages on its "wrongful dissolution" counterclaim.

There is no evidence indicating that Jewell & Co. was to exist for any specified length of time. When the partners do not agree upon a definite term or undertaking of the partnership, it is a partnership at will. *Frey v. Hauke*, 171 Neb. 852, 108 N.W.2d 228 (1961). Jewell & Co. was a partnership at will. Any partner, by express will, may dissolve a partnership at any time. Neb. Rev. Stat. § 67-331 (Reissue 1986).

Thomas argues that since no written partnership agreement existed, he could not dissolve the partnership in contravention of an agreement. This argument ignores the fact that a partnership agreement need not be written; by its very nature, the existence of a partnership implies an agreement.

However, it is unnecessary for us to consider the issue whether a dissolution may be wrongful without a written partnership agreement; in this case, we find no wrongful dissolution occurred. Thomas did nothing to harm the partnership while he was a member. His method of income

allocation was acquiesced to by the partners. Prior to the dissolution, he had the right to possess the client files. Pursuant to the agreement, Thomas was as free to pursue former clients as was the new version of Jewell & Co. Nothing which occurred after the partnership was dissolved is applicable to the determination of this issue. Therefore, the trial court erred in awarding any damages for wrongful dissolution.

In this appeal, Thomas also claims the trial court erred in granting Jewell & Co. recovery on the note. Thomas contends this action should have been barred by res judicata. We disagree.

This court recently affirmed the holding of the district court in that case in *Marvin E. Jewell & Co. v. Thomas*, 231 Neb. 1, 434 N.W.2d 532 (1989). There, the trial court held Jewell & Co. was the maker of the note and not an accommodation party, and Jewell & Co. was not allowed to recover on its accommodation claim.

In determining whether res judicata applies in a given instance, the operative pleadings, judgment, and evidence introduced in the prior proceedings must be examined. *State ex rel. Douglas v. Morrow*, 216 Neb. 317, 343 N.W.2d 903 (1984). The testimony given and exhibits introduced at the accommodation trial were introduced as exhibits in the present action, and the trial court took judicial notice of the pleadings.

A review of the pleadings in the earlier case shows us that Thomas was only contending that he was not liable to Union Bank. Instead, he argued he *was liable* to Jewell & Co. on the oral agreement. Thus, the original action was based solely upon the note between Union Bank and Jewell & Co. The counterclaim involves the underlying transaction between Jewell & Co. and Thomas, which required different proof. The result of the prior action was that Jewell & Co. had primary liability on the note, not liability as an accommodation party. It did not go to the merits of Thomas' liability to the partnership.

In addressing the issue of res judicata in its findings of fact, the district court stated:

> The prior action was only a determination of whether Jewell & Co. was entitled to recover on its legal theory that it was an accommodation party, and all other theories for

recovery of the debt were reserved for trial in this equitable action between partners. Further, it was understood by the court and the parties that Jewell & Co. would be entitled to proceed in this fashion, and it is doubtful, in fact, that Jewell [& Co.] could have asserted its other theories of relief in the note action since there had been no prior accounting between the partners. E.g., Linch v. Linch, 145 Neb. 792, 18 N.W.2d 98 (1945); RESTATEMENT (SECOND) OF JUDGMENT §26(1)(a), (b), (c) (1982).

In *Linch v. Linch,* 145 Neb. 792, 18 N.W.2d 98 (1945), we held that one partner cannot maintain an action at law against his copartner on matters relating to partnership business until the accounts of the partnership have been settled. In the counterclaim, Jewell & Co. contends there was an agreement among the partners that the partnership would make the payments of principal and interest on the note and charge the payments to Thomas' drawing account. As such, the counterclaim was based on the relationship of the partners within the partnership. It was not the type of action that could have been maintained prior to the accounting action.

Since Jewell & Co.'s counterclaim was not one which could have been maintained as an action at law prior to a settlement of the partnership accounts, it is not an issue which "could have been raised in the prior proceeding," and, thus, res judicata will not apply. *State ex rel. Douglas v. Morrow, supra.* Jewell & Co. is entitled to recover on the oral agreement which the court found existed between Thomas and the other four partners.

Further, a claim may be split when the parties have "agreed in terms or effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Restatement (Second) of Judgments § 26(1)(a) at 233 (1982). It would be unfair to allow Thomas to prevent Jewell & Co. from attempting to recover on the alternate theories when it was clear he consented to have the issue of his liability decided at a later action.

Thomas also raises the issue of the testimony of Warren Hinze. Thomas objected to the admission of Hinze's opinion testimony at trial concerning the effect of the announcement letters Thomas' new firm sent to Jewell & Co. clients as being outside his area of expertise and based upon speculation and

conjecture. In light of our disposition of Jewell & Co.'s wrongful dissolution claims, this matter need not be discussed.

Thomas also argues that the trial court erred in allowing Jewell & Co. to amend its answer and counterclaim during trial.

The right to amend pleadings rests within the sound discretion of the trial court and the allowing of an amendment will not be error unless prejudice resulted. . . .

. . . .

Prejudicial error results when a pleading is allowed to be amended where the amendment changes the issues and affects the quantum of proof as to any material fact.

*Collection Associates, Inc. v. Eckel*, 212 Neb. 607, 608-09, 324 N.W.2d 808, 809-10 (1982).

Thomas argues the amendment caused him prejudice because he did not have any prior notice that Jewell was going to rely on an oral agreement theory. Such an argument rests in large part upon what was in the pleadings of Jewell & Co. The transcript which Thomas asked for, and which was filed with this court, does not contain any prior pleadings of Jewell & Co. It contains only the second amended answer and counterclaim of Jewell & Co. Based upon the record *as it exists*, it is difficult to say that the trial court abused its discretion in allowing Jewell & Co. to amend its counterclaim, because there is no indication, other than Thomas' assertions, that new issues were raised by the amended pleading.

In conclusion, (1) no damages for wrongful dissolution should have been awarded, nor should Thomas' action for an accounting be barred by the doctrine of unclean hands. Thomas is entitled to his capital account as determined by the trial court. (2) The trial court did not abuse its discretion in allowing Jewell & Co. to present its note claim, and this claim is not barred by the doctrine of res judicata. (3) Thomas' share of the profits should have been determined on the formula used for the 1980 and 1981 division. (4) The parties received all of the goodwill to which they are entitled. (5) Any amounts found owing to Thomas by Jewell & Co. can be offset by the amounts owed by Thomas to Jewell & Co. on the note claim.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.