DAVID DARR, APPELLANT, V. D.R.S. INVESTMENTS, A PARTNERSHIP, ET AL., APPELLEES.

441 N.W.2d 197

Filed June 16, 1989.   No. 87-613.

Douglas L. Kluender, of Healey, Wieland, Kluender, Atwood & Jacobs, for appellant.

Randall L. Goyette and Dallas D. Jones, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and RIST, D.J.

RIST, D.J.

This is an action for the dissolution of a partnership and for an accounting with respect to such dissolution.

On August 2, 1976, the plaintiff and defendants James Stephens and Erwin Rung entered into an agreement creating a partnership known as D.R.S. Investments (DRS). Each partner contributed $1,500 in cash to the partnership.

The purpose of the partnership as stated in the agreement was to own, build, rent, sell, or otherwise dispose of real or personal property. The partnership in fact built a building upon land owned by J.E.D. Construction (JED), a corporation, in which corporation all the partners were equal stockholders, the partnership leasing the land from the corporation for 35 years with a 10-year renewal option and leasing back some of the building space to JED. Funds were borrowed by the partnership for the construction of the building, the corporation and partnership mortgaging the land and building to secure the same.

The partnership agreement provided for equal sharing of the partners in net profits and net losses, the same to be credited or charged to the drawing account of each partner. The agreement further provided that the books of the partnership were to be

maintained on a cash basis and closed on December 31 of each year.

Paragraph 10 of the agreement provided:

> Any partner may retire from the partnership at the end of a calendar year, provided he has given sixty (60) days advance written notice of his intention to the other partners. Such a retirement shall cause a dissolution of the partnership, but the remaining partners shall have the right to continue the partnership business provided the continuing partnership pays to the retiring partner the value of his interest in the partnership. *For this purpose the value of the interest of a retiring partner shall be the amount of his capital account, plus or minus any credit or debit balance in his drawing account, all determined at the end of such calendar year in accordance with the accounting methods regularly used by the partnership.*

(Emphasis supplied.)

During 1976, all accounting appears to have been done on a cash basis. Beginning in 1977, however, on the recommendation of its accountant, the partnership accounting for income tax purposes was done on an accrual basis, resulting in tax losses in all subsequent years, which the partners reported on their respective income tax returns. The record shows the purpose of using accrual accounting was to provide income tax losses that would exceed any such losses if reported on a cash basis.

The partnership agreement was prepared by an attorney for the partnership, the record not reflecting whether any partner or partners had any particular input into it. The record shows the parties considered the agreement, after it was prepared, without any detailed study or consideration and signed it.

On May 10, 1982, plaintiff wrote the defendant partners, giving notice of his intention to retire from the partnership at the end of 1982 because of a disability, and asked whether they elected to pay his interest in the partnership or whether they wished to liquidate the assets and make final distribution. Later that year the defendant partners wrote plaintiff, accepting his retirement and advising him that they intended to continue the partnership and that they would pay him the value of his interest as determined under paragraph 10 of the partnership

agreement. They further advised that a meeting would be held January 11, 1983, to determine that value as of the end of 1982. Such meeting was held, but the plaintiff did not attend. Subsequent thereto, defendant partners offered plaintiff $1,500 for his interest in the partnership, which he rejected.

At some point during this period, plaintiff also disposed of his interest in JED.

On March 1, 1985, plaintiff commenced this action for dissolution and accounting. The defendants in their answer pleaded the provisions of paragraph 10, that plaintiff had a negative balance in his capital account in the amount of $7,866.66, and that he owed the partnership this amount for which they counterclaimed against him. Plaintiff, in his reply, denied defendants' determination of his interest, alleged that paragraph 10 of the partnership agreement did not express the intent of the parties and should be reformed to reflect the correct intent and that it was unconscionable, denied the counterclaim, and renewed the prayer of his petition.

Trial was held to the court on January 26, 1987, and on April 14 of that year the trial court found no clear and convincing evidence existed that prior to the execution of the partnership agreement, there was any agreement respecting the valuation of a partner's interest other than expressed in paragraph 10 of the agreement; that each party had contributed $1,500 to the partnership and built the building on land owned by JED with lease and lease-back arrangements as previously set forth in this opinion; that the customary accounting method of the partnership was on an accrual basis; that at the end of 1982, each partner's capital account reflected a negative balance of $7,866.66; that there was no mutual mistake; that the agreement was conscionable; and that the plaintiff owed the defendants the sum of $7,866.66. The trial court entered judgment for defendants and against plaintiff for that amount.

On appeal, plaintiff assigns as error (1) the failure of the trial court to reform the partnership agreement, and (2) the trial court's award of judgment to defendants in the absence of a partnership provision authorizing such award.

This being an equitable action, we review it de novo on the record; where evidence is in conflict, we consider and may give

weight to the fact that the trial court saw and heard the witnesses and observed their demeanor while testifying. *Thomas v. Marvin E. Jewell & Co., ante* p. 261, 440 N.W.2d 437 (1989).

With respect to plaintiff's claim that the partnership agreement should be reformed for mutual mistake with respect to the provision determining the value of a retiring partner's share in the partnership, the rule is well established that such reformation may be decreed where there has been a mutual mistake or where there has been a unilateral mistake caused by the fraud or inequitable conduct of the other partner. Proof of such mistake must be shown by clear, convincing, and satisfactory evidence. *Ridenour v. Farm Bureau Ins. Co.*, 221 Neb. 353, 377 N.W.2d 101 (1985).

Reformation is decreed in order to set forth the real agreement of the parties when the written instrument does not represent their true intent. Such reformation may be decreed with respect to a mutual mistake, and in that situation the erroneous written agreement is conformed to the antecedent agreement of the parties entered into prior to the execution of the erroneous written agreement. *Ridenour v. Farm Bureau Ins. Co., supra*; *Johnson v. Stover*, 218 Neb. 250, 354 N.W.2d 142 (1984).

An examination of the record reflects that until plaintiff's retirement, there was no expression by any of the parties as to what a retiring partner should receive. There is no evidence that the defendant partners ever understood or agreed to plaintiff's conception of what his retirement rights were. From the beginning of the partnership to the time of plaintiff's retirement, the only evidence of what the parties intended is what is expressed in the partnership agreement. The partners now differ over its meaning. The evidence supports the trial court's finding that there is no mutual mistake warranting reformation of the contract.

Plaintiff asserts that reformation should be had because the agreement with respect to the valuation of his interest as a retiring partner is unconscionable. His claim is the parties did not contemplate any system of accounting that would result in a negative amount being due from a retiring partner and that

equity requires the valuation of his partnership interest by taking into account the appreciated value of the partnership assets. What constitutes appropriate accounting will be dealt with later in this opinion. Suffice it to say at this point that parties creating a partnership have a wide selection of methods to value a retiring partner's interest. If they choose one that does not include a determination of appreciated value, that is a choice they are free to make.

In this case, the partnership agreement makes no reference to such appreciated value but, rather, provides for a capital account plus or minus profits or losses of the partnership upon a cash basis accounting.

We take note of the testimony of the accountants who testified in effect that unless an agreement specified an accounting with appreciated asset values, such values would not be considered in any normal accounting practice or procedure.

In *G & S Investments v. Belman*, 145 Ariz. 258, 700 P.2d 1358 (1984), the estate of a deceased partner disputed the valuation of that partner's interest under a buy-out provision by the remaining partners. The partnership agreement called for payment of the deceased partner's capital account with certain adjustments. The deceased partner's estate claimed a right to share in the appreciated value of the partnership assets. The Arizona Court of Appeals disagreed, holding that the words "capital account" were not ambiguous where the contract called for cash basis accounting, as such words have a recognized meaning that does not include appreciated value, and that a buy-out provision may involve a different amount than might be realized in a total dissolution and sale of assets. The court said,

> Because partnerships result from contract, the rights and liabilities of the partners among themselves are subject to such agreements as they may make. . . .
>
> Partnership buy-out agreements are valid and binding although the purchase price agreed upon is less or more than the actual value of the interest at time of death. . . .
>
> . . . .
>
> We do not have the power to rewrite [the buy-out provision] based upon subjective notions of fairness

arising long after the agreement was made or because the agreement did not turn out to be an advantageous one. Modern business practice mandates that the parties be bound by the contract they enter into, absent fraud or duress. . . . It is not the province of this court to act as a post-transaction guardian for either party.

145 Ariz. at 267-68, 700 P.2d at 1367-68. Such holding is applicable to the situation in this case.

We find from the record that all the partners of DRS were experienced businessmen and that they saw and had opportunity to read the partnership agreement and to discuss it before signing it. Plaintiff cannot now have changes in it because he was inattentive to what he signed. We further find there is no evidence of fraud or overreaching.

Regardless of what appreciation of the assets may have accrued, it was proper for the parties at the inception of the partnership to have determined the method of accounting which did not include any such future appreciation. The trial court correctly held that the partnership contract was not unconscionable and that appreciated values were not appropriate in this case.

Plaintiff's argument that the agreement provides only for the payment of a positive amount to a retiring partner and that the contract is silent with respect to any negative balance appears to suggest that the agreement is incomplete in this regard and that the provisions of the Uniform Partnership Act, Neb. Rev. Stat. §§ 67-301 et seq. (Reissue 1986), may apply. The trial court found paragraph 10 of the agreement clear and unambiguous in this regard, and we agree. The agreement requires profits and losses to be credited or debited to a partner's capital account through the use of a drawing account. It follows that if losses exceed the original capital account investment of a partner, there is an amount due and owing the partnership from a retiring partner for losses exceeding the original capital account balance. No recourse to the Uniform Partnership Act is necessary.

The remaining issue is whether the use of accrual accounting was appropriate under the partnership contract to determine the plaintiff's interest in the partnership. The agreement calls

for the use of cash basis accounting. Defendants claim that the partnership in fact used accrual accounting and that such is the "method regularly used by the partnership" as that phrase appears in paragraph 10 of the agreement. There is no question that from 1977 on, for income tax purposes, accrual accounting was used. The question now is whether that use for income tax purposes is binding upon the partnership in all accounting procedures required under the agreement.

The record is clear that the partnership accountant recommended accrual accounting for specific use with respect to income tax reporting, since it would give greater deductions to the partners on their individual returns than would cash basis accounting. All of the parties accepted this with respect to income tax reporting. We also determine from the testimony of the accountants that individuals or entities are entirely at liberty to select one method of accounting for income tax purposes and another method of accounting for other purposes.

Since the partnership agreement provided for cash basis accounting, a proper construction of the agreement would require this method of accounting to apply unless the parties by their subsequent actions evidenced a clear choice to have the partnership accounting done on an accrual basis for all purposes. Given the uncontradicted record that accrual accounting was solely motivated by income tax considerations, that the partnership could lawfully and properly use accrual accounting for that purpose only and cash basis accounting for other purposes, that the agreement provides for the use of cash basis accounting for partnership purposes, and that prior to this dispute accrual accounting was used only for income tax purposes, we find the valuation of a retiring partner's capital account should be determined upon a cash basis as provided in the agreement. With respect to what constitutes cash basis accounting, we hold the same is to be done in accordance with accepted accounting procedures and the terms of the agreement.

We therefore find that the trial court erred in accepting an accounting of plaintiff's capital account on an accrual basis and that the same should be determined upon a cash basis.

We reverse and remand this cause to the trial court for

determination of plaintiff's interest as a retiring partner under appropriate cash basis accounting as of December 31, 1982, and for disposition accordingly.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, J., dissenting.

I would reverse. The case is a classic example of otherwise business-wise persons signing an agreement containing words whose meanings are not readily known to them, and whose application, except in the case of the lone survivor, is disastrous.

It is obvious that the partnership was not formed in anticipation of a yearly profit. The partnership was intended to lose money (whether real or bookkeeping money), and the anticipated gain was to be made in liquidation, consisting of asset appreciation and recovery of claimed depreciation costs.

Two phrases in the agreement are the source of the trouble: "capital accounts" and "cash basis" accounting.

Capital generally consists of the difference between the book value of assets and liabilities. We know that each partner contributed $1,500 to the partnership, that no withdrawals were made, and that a fair reading of the record supports a finding that the difference between asset value and liabilities is in the $60,000 range.

We note that the rules for the cash basis accounting were not specified in the agreement, but consisted of charges to partnership income as determined by the firm's accountant. The elimination of two items alone would establish a plus figure for the value of appellant's interest; neither is a cash item, i.e., depreciation of the partnership building and a charge of accrued debts to a corporation wholly owned by the partners. (The propriety of the last item as an allowable deduction was sharply disputed by the two accountants who testified.)

The fairness of a system whereby depreciation is charged against a capital account but appreciation is not aside, the suggestion that there is not a mutual mistake proven when three partners enter into a pact, which as interpreted provides for financial suicide on the part of two of them, is not realistic.

In the absence of a meeting of the minds as to dissolution, I would remand the matter to the district court for dissolution proceedings in accordance with the Uniform Partnership Act.

CAPORALE, J., joins in this dissent.