GARY L. REICHERT, AN INDIVIDUAL, AND FRED REICHERT, JR., AN INDIVIDUAL, ALSO DOING BUSINESS AS MONUMENT JEWELERS AND REICHERT JEWELERS, INC., APPELLEES, V. RUBLOFF HAMMOND, L.L.C., APPELLANT.

645 N.W.2d 519

Filed June 7, 2002.   No. S-01-128.

John F. Simmons, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellant.

Michael J. Javoronok, of Michael J. Javoronok Law Firm, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This is an appeal from a permanent injunction imposed by the district court against appellant, Rubloff Hammond, L.L.C. (Hammond), from leasing space to a competitor of appellees, Gary L. Reichert and Fred Reichert, Jr. (Reicherts). The court found that Hammond, the lessor, had intended that the Reicherts would have the exclusive right to operate fine jewelry stores in Monument Mall in Scottsbluff, Nebraska. The court further found that an " 'exclusive remedy' " provision in a commercial lease did not provide an adequate remedy at law or prevent it from giving injunctive relief. The exclusive remedy gave the Reicherts the right to terminate their lease agreement or reduce their rent by 50 percent for a specified period if Hammond breached the lease agreement.

We determine that Hammond breached the lease agreement by executing a lease with a competing store. However, because the exclusive remedy provision limited the Reicherts' rights to reduced rents or a termination of the lease agreements, the district court erred in granting the injunction.

## BACKGROUND

In 1986, Fred Reichert opened Reichert Jewelers, Inc., in Monument Mall in Scottsbluff. In 1994, Fred Reichert learned that Ridco, Inc., a retail jewelry chain doing business as Riddles Jewelers (Riddles), sought to lease space in Monument Mall. In August 1994, the Reicherts reached a 4-year lease agreement with the owners for space to open a second store in Monument Mall, known as Monument Jewelers. The lease agreement was with Mid-America Realty Investments, Inc. (Mid-America), the predecessor in interest to Hammond. The minimum monthly rent over the term averaged $2,137.50 for 1,140 square feet plus 5.5 percent of gross receipts in excess of an average of $513,000. According to an affidavit from Fred Reichert, the lease was executed to prevent the owners from leasing space for a Riddles store. The Reicherts renewed their lease agreement for the Reichert Jewelers store space in 1997 for a term of 2 years, which expired in August 1999. The minimum monthly rent was $1,162.33 plus 5.5 percent of gross receipts in excess of $275,000.

Mid-America later sold its ownership of the mall to Hammond. Sometime in 1999, the mall manager for Hammond informed Fred Reichert that Ridco had again sought to lease space in Monument Mall for a Riddles store. In August 1999, the Reicherts and Hammond agreed to amend both lease agreements. The amendments extended the term for both leases to 10 years, or until July 2009.

Under the amendments, the minimum monthly rent for Reichert Jewelers during the first 5 years was $1,585—an increase in monthly rent of $422.67. However, the threshold for determining the 5.5 percentage rent increased by $150,000. The minimum monthly rent for Monument Jewelers for the first 5 years increased by $109.25 from its monthly rent at the end of the 1994 lease to $2,294.25. The threshold for determining its percentage rent decreased by about $23,800 compared to the final year under its 1994 lease. The combined changes increased the thresholds for both of the Reicherts' stores by approximately $126,200, from a total threshold of $799,400 to approximately $925,600.

Both amendments to the lease agreements contained the following provision:

So long as Tenant is open and operating its business as provided for in the Lease . . . and is not otherwise in default under the Lease . . . then Landlord covenants and agrees that during the period commencing on August 1, 1999 and expiring on July 31, 2004, no space in the Shopping Center will be leased or allowed to be leased, other then [sic] Tenant's operation, for the primary business of the operation of a jewelry store selling fine jewelry. The foregoing restriction shall not apply to (i) "Anchor Tenants" . . . (ii) any tenant, its successor, assign or replacement, open and operating in the Shopping Center as of August 1, 1999 . . . .

Landlord and Tenant acknowledge that in the event of a breach of this restriction, Tenant shall give Landlord written notice of such breach and Landlord shall have thirty (30) days from the date of said notice (or such longer period as may be reasonably required if Landlord is diligently attempting to remedy same) to remedy same. If Landlord fails to remedy such breach . . . Tenant shall have the rights set forth in the next paragraph as its sole and exclusive remedy because of such breach. . . .

. . . Tenant shall have, as its sole and exclusive remedy under the Lease, the right to either (i) decrease annual fixed minimum rent by 50% during the period such store . . . is open and operating . . . or (ii) terminate the Lease . . . . If Tenant elects (i) above, then Tenant shall resume paying full fixed minimum rent on the date such Competing Store ceases violating the restriction. If such Competing Store continues to violate the restriction for 270 days after the date said Competing Store opened for business, then Tenant shall have the further right to terminate the Lease . . . no later than 290 days after the date the Competing Store opened for business . . . .

On September 15, 2000, Hammond executed a lease agreement with Ridco to lease space for a Riddles store. Three days later, the Reicherts filed a petition for declaratory judgment and a permanent injunction against Hammond. In its answer, Hammond alleged that the Reicherts were limited to the exclusive remedy provision in the lease agreements.

At trial, the Reicherts adduced evidence to show that Ridco had received a more favorable rent arrangement than the Reicherts, both in terms of minimum rent per square foot and percentage rent. The Ridco lease agreement also contained a premises use restriction. The restriction provided that Ridco could terminate its lease agreement if one of the existing jewelry stores in the mall departed and Hammond then leased space to more than two tenants for the operation of a jewelry store. The chief financial officer for Ridco admitted in a deposition that this provision indicated to Ridco that the demographics of the area would support only two jewelry stores in the mall.

The Reicherts also presented expert testimony that the economy of Scotts Bluff County had remained flat for many years and that in such an economy, Riddles' gross receipts would have a substantial negative impact on the Reicherts' sales volume.

In its order, the court found:

• Hammond intended to give the Reicherts an exclusive right of operation for fine jewelry stores in the mall through July 2004.

• Hammond reasonably knew that this right constituted an important economic lease provision to the Reicherts.

• Even if the Reicherts chose to reduce their rent by 50 percent for 9 months, they would still pay almost $27,000 more during that period than Ridco for approximately the same store space.

• The evidence showed that there was a flat economy in the area and that Ridco's lower rent gave it an unfair competitive advantage.

• Hammond and Ridco anticipated that the addition of a Riddles store would force the closure of one of the Reicherts' stores before July 2004.

• Although parties are free to contract for a particular remedy for a breach of contract, this case was an equitable action to prevent a breach, or further breach, of the lease agreements.

The court relied upon a 1925 case for its ruling. See *Nebraska Wheat Growers Ass'n v. Norquest*, 113 Neb. 731, 204 N.W. 798 (1925) (holding that liquidated damages provision did not provide adequate remedy at law or prevent injunctive relief). The court held the reduction in rent was an inadequate remedy at law and that the Reicherts would incur irreparable damage without injunctive relief. It permanently enjoined Hammond from leasing or

allowing to be leased space for the primary purpose of operating a fine jewelry store to any mall tenant other than the Reicherts, so long as the Reicherts continued to operate their stores and were not otherwise in default, through July 31, 2004.

## ASSIGNMENTS OF ERROR

Hammond assigns that the district court erred in (1) enjoining it, (2) failing to read the lease provision as part of an integrated whole, (3) determining that the leasing of space to a competing jeweler is a violation of Hammond's obligation to the Reicherts, (4) giving no effect to the exclusive remedy provision of the contract, (5) determining that the additional rights given to the Reicherts in the event of Hammond's leasing space to a competing jeweler are exclusive only if they provide adequate recourse, and (6) determining that the Reicherts did not have an adequate remedy at law even if it correctly determined that Hammond breached its agreement.

## STANDARD OF REVIEW

The construction of a contract is a matter of law, and an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Cornhusker Internat. Trucks v. Thomas Built Buses*, 263 Neb. 10, 637 N.W.2d 876 (2002).

An action for injunction sounds in equity. In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Village of Winslow v. Sheets*, 261 Neb. 203, 622 N.W.2d 595 (2001).

## ANALYSIS

Hammond contends that it did not breach the lease agreements because the exclusive remedy provision qualifies its obligations under the lease agreements. Alternatively, Hammond argues that the court erred in failing to enforce the lease agreements of the parties as to their rights in the event of a breach.

The Reicherts contend that the court correctly determined that the exclusive remedy provision was inapplicable when an injunction is imposed to prevent a breach, or further breach, of a contract. They also contend that the court correctly determined that no adequate remedy at law existed and that, therefore, a permanent injunction should be entered against Hammond.

The first issue is whether Hammond promised, by the amendments to the lease agreements, to give the Reicherts the exclusive right to operate fine jewelry stores in the mall.

■ When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract. *In re Estate of Jakopovic*, 261 Neb. 248, 622 N.W.2d 651 (2001).

Hammond argues that the lease agreements must be read as a whole. Because the exclusive remedy provision gave the Reicherts the right to reduce rents or terminate the lease agreements if Hammond leased space to a competitor, Hammond argues that its promise was modified to include that contingency. We disagree.

The first sentence of the provision in the amendments to the lease agreements in question provides:

> So long as Tenant is open and operating its business as provided for in the Lease . . . and is not otherwise in default under the Lease . . . then Landlord covenants and agrees that during the period commencing on August 1, 1999 and expiring on July 31, 2004, no space in the Shopping Center will be leased or allowed to be leased, other then [sic] Tenant's operation, for the primary business of the operation of a jewelry store selling fine jewelry.

This sentence states that the right to be the exclusive operators of jewelry stores in the mall is the benefit for which the Reicherts bargained. Hammond agreed by this provision to refrain from leasing space to a competing store, or allowing space to be leased to a competing store, so long as the Reicherts were open for business and not in default until July 31, 2004.

The provision did not reserve to Hammond the right to either perform its promise or provide an alternative performance, such as liquidated damages. Rather, the right to termination of the lease agreements or reduced rents inured to the Reicherts upon Hammond's breach. Thus, the purpose of the termination provision is most reasonably construed as providing incentive for Hammond to perform its promise.

In addition, the implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract. *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000); *Cimino v. FirsTier Bank*, 247 Neb. 797, 530 N.W.2d 606 (1995). Allowing parties to claim that they have not promised a performance because of a remedy provision for their breach would undermine this important doctrine of contract law. Parties generally bargain for performance, not nonperformance. The plain language of the contract supports the court's finding that the parties intended the lease to provide the Reicherts an exclusive right to operate a fine jewelry store.

The second issue is whether the court correctly concluded that this was an action to prevent a breach of the exclusivity provision. A breach is a nonperformance of a duty. *Phipps v. Skyview Farms*, 259 Neb. 492, 610 N.W.2d 723 (2000). As discussed, Hammond agreed not to lease space or allow space to be leased to a competing store in the mall that operated for the primary purpose of selling fine jewelry. To "lease" is to "grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration." Black's Law Dictionary 900 (7th ed. 1999). Although the lease agreements provided Hammond with a 30-day opportunity to remedy the breach, the breach occurred when it executed a contract to lease space to Ridco for the operation of a jewelry store. The court erred in determining that this was an action to prevent a breach.

As the trial court recognized, the parties stipulated to a particular remedy in the event of a breach. The court, however, relied upon *Nebraska Wheat Growers Ass'n v. Norquest*, 113 Neb. 731, 204 N.W. 798 (1925), to conclude that this provision

did not prevent the Reicherts from seeking injunctive relief. In that case, this court held that a liquidated damages clause was an inadequate remedy at law and did not preclude injunctive relief. However, the damages clause in *Nebraska Wheat Growers Ass'n* did not specify that it was the sole and exclusive remedy under the lease. A contract will not be construed to limit the remedial rights of the parties unless that intention is clearly expressed. See, *Roberts Constr. Co. v. State*, 172 Neb. 819, 824, 825, 111 N.W.2d 767, 770, 771 (1961) (holding that "extension of time" provision was not sole remedy for highway improvement contractor against State when contract "*in the absence* of a 'no-damage clause' or other provision to the contrary in the contract" (emphasis supplied)); 17A Am. Jur. 2d *Contracts* § 748 (1991).

In contrast, the remedy provision in the amendments to the lease agreements provided:

> In the event Landlord fails to proceed with all diligence to remedy such violation, then, upon the expiration of thirty (30) days from the date of Tenants notice, Tenant shall have, *as its sole and exclusive remedy under the Lease*, the right to either (i) decrease annual fixed minimum rent by 50% during the period such store . . . is open and operating . . . or (ii) terminate the Lease . . . .

(Emphasis supplied.)

In the context of liquidated damages provisions, this court has held that "parties to a contract may override the application of the judicial remedy for breach of a contract by stipulating, in advance, to the sum to be paid in the event of a breach." *Kozlik v. Emelco, Inc.*, 240 Neb. 525, 535, 483 N.W.2d 114, 120-21 (1992); *Crowley v. McCoy*, 234 Neb. 88, 449 N.W.2d 221 (1989). "This court has consistently upheld the right of contracting parties to privately bargain for the amount of damages to be paid in the event of a breach of contract, provided the stipulated sum is reasonable in light of the circumstances." *Kozlik*, 240 Neb. at 535, 483 N.W.2d at 121. Other jurisdictions have held that a trial court erred in granting specific performance when an exclusive remedy clause limited the injured party's rights. See, *Doyle v. Ortega*, 125 Idaho 458, 872 P.2d 721 (1994); *Sun Bank of Miami v. Lester*, 404 So. 2d 141 (Fla.

App. 1981). This result is justified when the parties foresee the specific nonperformance and agree to an exclusive remedy in that event.

Here, the remedy provision in the amendments is not ambiguous and limits the Reicherts' rights for this particular breach to decreased rents or termination of the lease agreements. Just as Hammond is bound by the plain language of its covenant to forebear leasing space to a competing store, so the Reicherts must be held to the plain language of the exclusive remedy provision. No conflict exists between the two provisions, and effect may be given to both.

The question of the reasonableness of a remedy generally addresses whether a liquidated damages clause is so great as to constitute a penalty. See *Kozlik, supra*. Agreed-upon damages can also be so small as to be stricken as unconscionable in light of the breach. See, *Purcell Tire & Rubber v. Executive Beechcraft*, 59 S.W.3d 505 (Mo. 2001); Restatement (Second) of Contracts § 356, comment *a*. (1981). When, however, the parties are experienced in business, the damages are economic, and the parties had fair opportunity to consider the agreement, courts rarely find that liability limitations are unconscionable. See *Purcell Tire & Rubber, supra*. Compare *Darr v. D.R.S. Investments*, 232 Neb. 507, 441 N.W.2d 197 (1989) (method set forth in partnership agreement for valuing retiring partner's interest was not unconscionable when evidence showed that partners were experienced businessmen with opportunity to read partnership agreement and to discuss it before signing).

The right to terminate a lease agreement is an important bargaining tool and, in most cases, a significant economic benefit. See, generally, *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 254 Neb. 418, 576 N.W.2d 806 (1998). This benefit is demonstrated by Ridco's termination right in the restrictive use provision in its lease agreement with Hammond. Although the Reicherts may in retrospect be dissatisfied with this bargained-for provision, this court will not rewrite a contract to provide terms contrary to those which are expressed. See, *Kozlik, supra*; *Kansas-Nebraska Nat. Gas Co. v. Swanson Bros.*, 215 Neb. 398, 338 N.W.2d 774 (1983).

## CONCLUSION

The district court erred in granting a permanent injunction when the parties clearly intended that the exclusive remedy in the event of a breach would be the termination of the lease agreements or a reduction in rents.

REVERSED.