## OSAGE OIL & REFINING CO. et al. v. MULBER OIL CO. et al.

### No. 218.

Circuit Court of Appeals, Tenth Circuit.

Sept. 10, 1930.

See, also, 38 F.(2d) 396.

J. E. Whitehead, of Dallas, Tex., for appellants.

S. K. Sullivan and Neal A. Sullivan, both of Newkirk, Okl., for appellee Mulber Oil Co.

Horace H. Hagan and T. Austin Gavin, both of Tulsa, Okl., for appellee Elm Oil Co.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

Appellants' bill to foreclose a mortgage or claimed vendor's lien on an Osage Indian oil lease covering a quarter section was dismissed on final hearing. Appellant company is a South Dakota corporation. It obtained the lease with the approval of the Secretary of the Interior in January, 1918, and operated it. Early in 1922 it became embarrassed financially and was unable to pay its debts. Its creditors, believing the lease of value, were anxious that it be not sacrificed. The result of negotiations was that the creditors organized the Mulber Oil Company, an Oklahoma corporation, and that company entered into a contract with the Osage Oil and Refining Company by which the latter sold and assigned the lease to the Mulber Oil Company with the Secretary's approval. Some of the creditors of the Osage Oil and Refining Company were induced to take stock in the Mulber Oil Company for their claims, but others would not. The consideration to be paid by the Mulber Oil Company for the lease was as follows: $59,712.50 of the Osage Company's debts to named creditors who would not take stock in the Mulber Company was to be assumed by the Mulber Company and it was to give its note to Osage Company for $85,287.-50. The balance, $5,000, of the purchase price seems to have been paid down. In closing the transaction the Mulber Company on April 28, 1922, executed two mortgages on the lease, one to L. D. Edgington, trustee, to secure the creditors whose claims the Mulber Company had assumed, and the other to the Osage Company to secure the note for $85,-287.50. In the mortgage to Osage Company there is this paragraph:

"This mortgage being a purchase money mortgage but also being a second mortgage in so far as it covers the northeast quarter of said section 23, the prior mortgage being given to L. D. Edgington, Trustee, to secure an aggregate sum of $59,712.50."

In view of this excerpt it cannot be doubted that the mortgage given to Edgington, trustee, was prior in lien and right to the claim of Osage Company.

The Mulber Oil Company took possession and operated the lease with but little, if any, profit. In the meantime the creditors secured by the mortgage to Edgington were pressing for payment. The Mulber Company did not have the necessary funds and could not get them. So to delay foreclosure of that mortgage the Erton Oil and Investment Company was organized, its stock sold and the proceeds used to purchase the claims of the secured creditors. Then in May, 1924, a foreclosure decree on the Edgington mortgage was entered in the state court, the lease ordered sold, it was sold to the Erton Company on its bid of $44,000 by the sheriff of Osage county, and the sale approved by the court. The assignment of the lease to the Erton Company under that sale was also approved by the Secretary of the Interior on July 29, 1924.

In November, 1925, the Erton Company, in consideration of $50,000, sold and assigned the lease to the Elm Oil Company, and that was approved by the Secretary. In January, 1926, the Elm Company sold and assigned to Felix Quinlan and E. A. Babcock, each an undivided ⅛th interest in the lease, and that was also approved by the Secretary. Each of the assignees in turn took possession and carried on operations under the lease, the Elm Company, Quinlan and Babcock being in possession when this suit was brought in March, 1927.

The bill named as defendants Mulber Oil Company, Erton Oil and Investment Company, Elm Oil Company, Felix Quinlan and E. A. Babcock, and others, and alleged that they claimed and asserted some right and interest in the lease, denied they had any such right or interest and averred that if they had their claim was junior and inferior to the rights of the Osage Company under said note ($85,287.50) and vendor's lien, and their claims should be foreclosed and barred. The bill admitted payment of $30,532.15 on said note. The bill prayed for a receiver and a decree establishing appellant's claimed prior lien and that the lease be sold in satisfaction thereof. The answer of the Elm Oil Company and Quinlan and Babcock set up the facts

that have been stated in reference to the transactions, alleged the foreclosure decree in the state court and the sale made thereunder, that the Erton Oil and Investment Company purchased at that sale on its bid of $44,000, that it sold the lease so purchased to the Elm Company for $50,000, that it had no knowledge of plaintiff's claim, that the Elm Company subsequently sold an undivided ⅛th interest in the lease to Quinlan and an undivided ⅛th interest to Babcock, that said transactions were all approved by the Secretary of the Interior, that said Elm Company, Quinlan and Babcock acted in good faith and have made large expenditures, and because of the facts stated the Elm Company, Quinlan and Babcock are now the owners of said lease; but that if for any reason the foreclosure decree in the state court and the sale of the lease under that decree should be held invalid, that they be subrogated to the rights of the beneficiaries in the mortgage thus foreclosed, and so protected against the claims of the plaintiff. The Mulber Oil Company in its answer alleged that it was unable to meet the payments secured by the mortgage given to Edgington, trustee, that it was sued in the district court of Osage county, Oklahoma, for foreclosure of the mortgage, the mortgage was foreclosed, and the property taken from it under that decree. The other allegations in its answer need not be noticed.

The Osage Company filed a lengthy reply to the answer of Elm Oil Company and Quinlan and Babcock. As a pleading it is out of place unless the plea of Elm Company, Quinlan and Babcock in their answer, setting up a claim of subrogation, be taken as a counterclaim under the Equity Rules. The Osage Company resists that claim. It alleges in its reply that the foreclosure decree in the state court was fraudulent and void and the result of a conspiracy to defraud the Osage Company, entered into between the defendants for the purpose of defeating plaintiff's vendor's lien note and the mortgage given to secure it. We have read the record and find no basis for a claim of fraudulent conduct in any of the transactions with appellant, or in procuring the foreclosure decree. Furthermore, the District Judge heard and saw the witnesses and found all of the issues against the Osage Company. Moreover, there is not the slightest ground for the contention that the foreclosure decree in the state court was in any respect or for any reason void or invalid.

As we have already said, the paragraph in the mortgage given to the Osage

Company made it a second mortgage. In accepting that mortgage its lien on the leasehold estate for the balance of the purchase price due it, whether it be called a vendor's lien or a mortgage lien, was made subject to 'the lien of the mortgage given to Edgington, trustee. Both of those mortgages were drawn by the attorney for the Osage Company, and the quoted paragraph clearly shows that it was the intent of the interested parties that the mortgage to secure those who had been creditors of the Osage Company should be first and prior in right as between it and those creditors. When the trustee in that mortgage brought the foreclosure suit in the state court it made the Mulber Oil Company, mortgagor and owner of the equity of redemption, a defendant, and the decree shows it was served with summons and made default. It also named appellant company as a defendant. Being a foreign corporation it had had a designated agent in Oklahoma on whom service of summons could be had, but that agent had removed from the state, and it is argued that leaving the summons with the Secretary of State for appellant, pursuant to state statute, was not a legal service on it of said summons. Let it be granted. That is wholly immaterial to the validity of the judgment in that case. "The general rule is that a junior encumbrancer is not a necessary party to a suit by a senior mortgagee to foreclose in such a sense that his presence on the record is necessary to a valid decree." 42 C. J. p. 57. The citations show that the rule has general recognition. That is the rule in Oklahoma. McCredie v. Dubuque F. & M. Ins. Co., 63 Okl. 184, 163 P. 535. Except in rare instances, none of which exist here, the only right of a junior mortgagee against his senior is to redeem the senior mortgage; but appellant does not propose to do that. It resists and objects to that claim on the part of the Elm Company, Quinlan and Babcock. In Compton v. Jesup (C. C. A.) 68 F. 263, Circuit Judge Taft said at page 298:

"The ordinary equitable rule is that the junior mortgagee cannot compel the sale of the premises free from the lien of the senior mortgage, against the consent of the senior mortgagee, but that his only remedy is to redeem the senior mortgage."

And Circuit Judge Lurton said in the same case, at page 311:

"The remedy of a junior incumbrancer, both before and after foreclosure, is to redeem the senior mortgage. Without the consent of the prior mortgagee, a junior lienor could not enforce a sale of more than the mortgagor's equity of redemption. If he wished a sale free from the prior lien, and the prior lienor will not consent, the decree should be that he redeem, and then foreclose for the enforcement of his own lien, and that he had redeemed. 2 Jones, Mortg. §§ 1394–1396, 1431, 1439, 1580; Jerome v. McCarter, 94 U. S. 734 [24 L. Ed. 136]; Woodworth v. Blair, 112 U. S. 8, 5 S. Ct. 6 [28 L. Ed. 615]; McKernan v. Neff, 43 Ind. 503; Spurgin v. Adamson, 62 Iowa, 661, 18 N. W. 293. A judicial foreclosure sale is not void because one interested in the equity of redemption, as a junior mortgagee, was not a party. 'The sale vests the estate in the purchaser, subject to redemption by the owner of the equity, or other person interested in it, who was not a party to the proceedings. His only remedy, however, is to redeem' "—citing cases.

Unless cut off by laches, or for some other reason, a junior mortgagee may redeem from the purchaser at a foreclosure sale, for the purchaser stands in the shoes of the mortgagee, and likewise as to his grantees. Romig v. Gillett, 187 U. S. 111, 117; Id., 17 Okl. 324, 87 P. 325. Such purchasers are subrogated to the rights of the senior mortgagee. But when Elm Company, Quinlan and Babcock proposed subrogation in their answer appellant replied that the state decree was void and they had no rights—a queer notion of the principle that one who seeks equity must do equity.

Appellant waited almost three years after entry of the foreclosure decree in the state court before bringing this suit. The property involved was a mining leasehold, subject to sudden and great fluctuations in value and hazardous to those who invest their money in such enterprises. The court held that appellant was barred by laches. That may have been an appropriate and right conclusion on the facts had the bill been one to redeem, but it was not.

There is another peculiar aspect of this case. Appellants took their appeal only as to the Mulber Oil Company and the Elm Oil Company, notwithstanding Quinlan and Babcock were made defendants and they answered and set up their rights. No appeal was asked as to them and no citation served on them. They are unquestionably interested. The case is heard here de novo. They are not entitled to be heard as to their rights on this appeal. On the pleadings and the facts the Osage Company is without right to relief in a court of equity in this case.

The decree is affirmed.