ARKANSAS REAL ESTATE COMMISSION
*v.* Frances VETETO, et al.

89-227                                      798 S.W.2d 52

Supreme Court of Arkansas
Opinion delivered October 29, 1990

*Steve Clark*, Att'y Gen., by: *Stacy Van Ausdall*, Asst. Att'y Gen., for appellant.

*John W. Beason*, for appellee.

JOHN C. GREGG, Special Chief Justice. The Real Estate Recovery Fund (Fund) was created in 1979 pursuant to Act 73 of 1979 (now Ark. Code Ann. § 17-35-401 *et seq.*) The Act authorizes payment to victims of illegal or unethical acts by real estate brokers and agents (licensees) not to exceed $10,000.00 for any one violation, or $50,000.00 for the acts of any one licensee. The Fund is administered by the Arkansas Real Estate Commission (Commission), Appellant.

Appellees (hereafter claimants) were claimants before the Commission due to the illegal and unethical acts of Gary W. Jenkins and John E. Massey, brokers licensed by the Commission. Between 1981 and 1984, Jenkins and Massey defrauded the claimants who subsequently filed claims with the Commission. The Commission determined approximately $216,000.00 in total damages.

Prior to the claimants filing their claims with the Commission, Jenkins filed for relief pursuant to Chapter 7 of the United States Bankruptcy Code and was granted a discharge on April 28, 1987. Jenkins listed all of the claimants in his bankruptcy proceeding except Dwight and Beverly Reeves. Thus, Dwight and Beverly Reeves' claim against Jenkins survived his discharge. None of the claimants filed proceedings to object to Jenkins' discharge.

In October of 1988 the claimants, including Dwight and

Beverly Reeves, filed 13 separate claims with the Commission seeking recovery from the "fund."

The Commission held hearings in November of 1988 and entered 13 separate orders on February 1, 1989. In each order, the Commission unanimously found that as a result of the proven violations of Jenkins and Massey, each claimant was damaged in a determined amount. Both Jenkins and Massey were directed to pay $8,700.00 damages in the Dwight and Beverly Reeves claim, and Massey alone was directed to pay damages in all 12 remaining claims.

On April 19, 1989, following the failure of Massey or Jenkins to pay the ordered amounts, the Commission held an additional hearing and voted unanimously to pay to the claimants $58,700.00 from the "fund." The Commission found that the claims against Massey were limited to the statutory limit of $50,000.00, but that due to the bankruptcy discharge of Jenkins, claims against him were limited to the surviving claim of Dwight and Beverly Reeves in the amount of $8,700.00.

All claimants, except Dwight and Beverly Reeves, appealed the decision of the Commission to the Circuit Court of Craighead County. On May 23, 1989 the Circuit reversed and remanded the matter to the Commission with directions to pay the full $50,000.00 "fund" benefit on behalf of *both* Jenkins and Massey, i.e., a total of $100,000.00.

From that order, the Commission appeals. We affirm for the reasons set out herein.

The Commission first asks us to reverse on the basis that the Circuit Court erred in holding that the "fund" was liable for determined damages awarded by the Commission due to acts of a licensee who had been previously discharged in bankruptcy.

We hold that the bankruptcy discharge granted to Jenkins did not abrogate the liability of the "fund" under the facts of this case.

A brief review of the statutory provisions is necessary. Under Ark. Code Ann. § 17-35-404(a) the "fund" is established and maintained by fees paid by licensees.

The awards procedure is set forth in Ark. Code Ann. § 17-

35-406. This statute provides:

(a) In any disciplinary hearing before the commission which involves any licensee who has allegedly violated any provision of this chapter or commission regulations, the commission shall first determine whether a violation has occurred.

(b) If so, the commission shall then determine the amount of damages, if any, suffered by the aggrieved party or parties. However, damages shall be limited to actual damages in accordance with § 17-35-407.

(c) The commission shall then direct the licensee to pay that amount to the aggrieved party or parties.

(d) If that amount has not been paid within thirty (30) days following entry of the commission's final order in the matter and the order has not been appealed to the circuit court, then the commission shall, upon request, pay from the fund to the aggrieved party or parties the amount specified. However, the commission shall not:

(a) Pay in excess of ten thousand dollars ($10,000.00) for any one (1) violation or continuing series of violations of a given licensee;

(2) Pay an amount in excess of the fund balance.

(e) The question of whether or not certain violations constitute a continuing series of violations shall be a matter solely within the discretion and judgment of the commission.

(f) Nothing within this section shall obligate the fund for any amount in excess of fifty thousand dollars ($50,000.00) with respect to the acts of any one (1) licensee.

Upon Jenkins filing for relief under the United States Bankruptcy Code, the automatic stay imposed by 11 U.S.C. § 362 became effective. However, upon Jenkins obtaining his discharge, the narrower discharge injunction of 11 U.S.C. § 524 came into effect. 11 U.S.C. § 524(a)(2) states:

(a) A discharge in a case under this title -

. . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived.

■ The discharge injunction is narrower in breadth than the automatic stay under § 362 which stays all judicial proceedings even when the debtor is only a nominal party. Although a discharge relieves the debtor from personal liability on the scheduled debts it does not have the effect of extinguishing the debt. *See In re Lembke*, 93 B.R. 701 (Bkrtcy D.N.D. 1988). Further, the discharge is intended for the personal benefit of the debtor and does not affect the rights or liabilities of any other parties. *Mellon Bank.* v. *M.K. Siegel*, 96 B.R. 505 (E.D. Pa. 1989), *In re Berry* 85 B.R. 367 (Bkrtcy W.D. Pa. 1988), *In re Barrup*, 51 B.R. 321 (Bkrtcy D.Vt. 1985).

Additionally, as we held in *First American National Bank* v. *Coffey-Clifton*, 276 Ark. 250, 633 S.W.2d 704 (1982), 11 U.S.C. § 524(e) provides that the "discharge of a debt of a debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

This case is very similar to the situation where a debtor's discharge in bankruptcy of liability to an accident victim does not affect the victim's ability to recover from the debtor's automobile liability insurer. See, *In re Traylor*, 94 B.R. 293 (S.D.N.Y., 1988).

■ Under the Act, the only conditions precedent to a claimant making application for payment from the "fund" are (1) the Commission shall first determine whether a violation has occurred, (2) the Commission shall determine the amount of damages suffered by the aggrieved party, (3) the Commission shall direct the licensee to pay, and (4) if that amount has not been paid within thirty (30) days following entry of the Commission's order the Commission shall, upon request, pay from the "fund" to the aggrieved party or parties the amount specified, however, not in excess of the statutory maximum.

The foregoing analysis leads us to the conclusion that

nothing in the discharge injunction of 11 U.S.C. § 524 prevents the Commission from directing a licensee to pay amounts to aggrieved parties. We agree that a directive to pay the aggrieved parties might have been meaningless in view of Jenkins' bankruptcy discharge, but we disagree that under the applicable law the discharge should defeat an entitlement to reimbursement which neither the Act nor the spirit of the Act implies is dependent upon anything other than a "request" by the aggrieved party for payment. The very language of Ark. Code Ann. § 17-36-406(d), makes it obligatory upon the Commission to honor such a request to the extent provided in the Act.

The second issue was actually raised by this Court. Ark. Code Ann. § 17-35-407(e)(1) and (2) impose certain jurisdictional limitations on circuit courts in reviewing appeals from the Commission. Neither party discussed jurisdiction. However, jurisdiction is a question we will raise on our own. *Arkansas Savings & Loan* v. *Corning Savings & Loan*, 252 Ark. 264, 478 S.W.2d 431 (1972). Because we were unsure of the intent behind § 17-35-407(e)(1) and (2) we took the unusual, but not unprecedented step of requesting appellant and appellees to address the jurisdiction limitations imposed upon the circuit court by § 17-35-407(e) which reads:

> The circuit court shall have no jurisdiction or authority to order payments from the fund in any amount in excess of either: (1) the amount determined by the commission; or (2) the limits set forth in § 17-35-406.

The Commission, in its supplemental brief, relies heavily upon Act 888 of 1989, which amended in part the Real Estate Recovery Fund Act. However, we deem these amendments prospective, and therefore not applicable to this proceeding. See *Scott* v. *Consolidated Health Management, Inc.*, 297 Ark. 601, 764 S.W.2d 434 (1989) and *Lucas* v. *Handcock*, 266 Ark. 142, 583 S.W.2d 491 (1979).

We hold that the circuit court did not exceed its authority or jurisdiction in ordering payment of the maximum amount of $50,000.00 due to Massey's actions and payment of the maximum amount of $50,000.00 due to Jenkins' actions.

The amounts ordered by the circuit court do not exceed the

$50,000.00 per licensee limit set forth in § 17-35-406.

Neither did the amounts ordered by the circuit court exceed the amount "determined by the Commission." In each separate proceeding before the Commission, the Commission found unanimously that as a result of the proven violations by both Jenkins and Massey, the claimants had been damaged and determined the amount of those damages to exceed a total of $216,000.00. However, due to an error in determining the legal affect of the bankruptcy discharge of Jenkins, the Commission restricted the amount paid from the "fund" due to the acts of Jenkins to $8,700.00 for the surviving claim of Dwight and Beverly Reeves.

The order of the circuit court rectified this incorrect legal conclusion and was within its authority and jurisdiction since the circuit court did not order the payment of any damages that had not been *determined* by the Commission.

HOLT, C.J., not participating.