McCOOK NATIONAL BANK, A NATIONAL BANKING ASSOCIATION, APPELLEE AND CROSS-APPELLANT, V. ARDEN E. MYERS AND EDITH MYERS, HUSBAND AND WIFE, ET AL., APPELLANTS AND CROSS-APPELLEES, AND MAXINE E. MYERS, APPELLEE AND CROSS-APPELLEE.

503 N.W.2d 200

Filed July 23, 1993.   No. S-91-316.

854

Daylene A. Bennett, of Burger, Bennett & Green, P.C., for appellants.

Susan C. Williams, of Murphy, Pederson & Waite, and Stanley C. Goodwin for appellee McCook National Bank.

George E. Clough, of Clough Law Office, for appellee Maxine E. Myers.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

WHITE, J.

Arden Myers; his wife, Edith Myers; and Adair Myers (the Myerses), along with the Myers Brothers partnership (the Partnership), appeal the judgment of the district court foreclosing two real estate mortgages signed by the Myerses and held by appellee McCook National Bank (the Bank). The foreclosure was allowed in order to pay two of the Partnership's notes which were in default. The Bank cross-appeals, arguing that the court erred by (1) refusing to grant its request for a receiver and (2) failing to value and foreclose an alimony lien held by Adair Myers' former wife, appellee Maxine E. Myers. We affirm as modified.

At the time of trial, the Myerses owned the mortgaged land, which was located in Red Willow and Hitchcock Counties, as tenants in common. A portion of the land was subject to Maxine's alimony lien, which was created by an August 16, 1979, divorce decree and provided alimony until her death or remarriage.

On the date the mortgages were executed, the Partnership owed the Bank $1,235,000 pursuant to two promissory notes. In August 1984, at the request of the Bank, the Myerses executed the two mortgages on the subject land. However, in their description of the debt secured, the mortgages indicated that the two notes were signed *by the Myerses in their individual capacity*. In August and December 1985, the Partnership executed two more promissory notes to the Bank, renewing the obligations under the previous notes. The Partnership defaulted on the renewal notes in 1986.

In May 1987, the Partnership filed for relief under chapter 12 of the Bankruptcy Code. Ultimately, the bankruptcy court confirmed the Partnership's debtor's plan, but not before two versions had been submitted. Summarized, the following relevant facts occurred during the bankruptcy: The Partnership's initial plan recited an overall indebtedness to the

Bank of $1,237,931.73. The plan then segmented the debt, listing the appraised values of the various assets which secured the debt and proposing to pay the Bank the amount of its secured claim in accordance with those appraised values. Although the payment periods and interest rates vary as to each secured amount, the plan divided the debt as follows: $163,400 for the debt secured by the Partnership's equipment; $60,160 for the debt secured by the Partnership's cattle; $33,428 for the debt secured by a government payment due the Partnership; $6,400 for the debt secured by the Partnership's wheat crop; and $447,647 for the debt secured by the real estate, the value of which real estate was reached by subtracting a specified amount for Maxine's alimony lien. The total proposed repayment under the plan was $711,035.

Following submission of the plan, the Bank objected to it. After reviewing a statement of facts submitted by the Partnership, the bankruptcy court ruled that the real estate was not subject to the bankruptcy proceeding. The Partnership then submitted two more versions of the debtor's plan, the second of which was confirmed by the bankruptcy court. Under its amended versions, the plan no longer included the real estate as security for any debt and listed only the Partnership's chattels as security. The plan proposed to pay only that portion of the debt secured by the Partnership's chattels, an amount which would result in a return of approximately $300,000 to the Bank. At the time of the trial in the present action, the Partnership was in full compliance with that plan.

In September 1989, the Bank filed the present suit, seeking foreclosure of the mortgages. The Bank's petition stated that "the [Myerses] executed and delivered to [the Bank] two promissory notes in the amount of $1,235,000.00" that were subsequently renewed by notes signed "Myers Brothers by Adair Myers." The petition then noted that the Myerses had executed two mortgages on land they owned "to secure the payment of the indebtedness now evidenced by [the aforementioned] notes." Although the petition included copies of the renewed notes and the mortgages, which still described the debt as being personal to the Myerses, the prayer for relief made no mention of reformation. The Bank also requested

appointment of a receiver.

In their amended answer, the Myerses denied their individual indebtedness to the Bank. The defendants also raised several affirmative defenses, including that (1) the Partnership's debt had been discharged in bankruptcy and (2) the Bank was collaterally estopped, through the bankruptcy decision, from claiming that the Myerses were indebted on the notes. At trial, after the parties had rested, the Bank requested that its petition be conformed to the proof. The district court sustained the motion.

In its order, the district court first held that the mortgages were made with the intent to secure the Partnership's notes. Additional rulings by the court included that (1) the applicable statute of limitations was foreclosure; (2) there was no res judicata; (3) estoppel had not been pled; (4) although the Partnership's debt was discharged, the mortgage was not; and (5) no receiver should be appointed.

With regard to Maxine's lien, the court held that it was a superior lien to the Bank's on the Red Willow County real estate and that the lien secured $35,621 in past alimony. The court also held that the amount of Maxine's future lien was not determinable and that thus foreclosure of the lien could not be made without her consent. However, the court ruled that the property could be sold subject to Maxine's lien.

The court then ruled that the Bank was entitled to a decree of foreclosure and sale. The court awarded the Bank a judgment of $1,419,405.52 and ordered the defendants' interest in the land foreclosed. The Partnership was given 20 days to pay the debt or the property would be sold, subject to Maxine's superior lien on the applicable portion of the land.

Summarized, the Myerses and the Partnership argue that the court erred by (1) determining that the Bank had properly pled its cause of action and permitting amendment of the pleadings at the end of the trial; (2) determining that reformation is not a separate cause of action and need not be specifically pled; (3) not holding that reformation was barred by the statute of limitations; (4) failing to determine that the Bank did not meet its burden of proof for reformation; (5) determining that despite discharge of the Partnership's debt in bankruptcy, the

mortgages remained a valid lien; (6) determining that the Bank did not meet its burden of proof for foreclosure; (7) determining that collateral estoppel was not pled; and (8) ordering that the mortgages be foreclosed if the Partnership did not pay the debt in 20 days.

On cross-appeal, the Bank alleges that the court erred by (1) not appointing a receiver and (2) not foreclosing Maxine's alimony lien and valuing it in the amount of past-due alimony payments.

A proceeding to foreclose a real estate mortgage is an equitable action. *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 749, 448 N.W.2d 123 (1989); *First Fed. Sav. & Loan Assn. v. Thomas*, 230 Neb. 465, 432 N.W.2d 222 (1988). When an equity case is appealed from the district court, the appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court. When the evidence conflicts, however, the appellate court may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Regency Homes Assn. v. Egermayer, ante* p. 286, 498 N.W.2d 783 (1993); *Eliker v. Chief Indus., ante* p. 275, 498 N.W.2d 564 (1993).

Bearing in mind the foregoing standard of review, we turn to the contentions of appellants, Myerses and the Partnership. Appellants' first four assignments of error all focus, directly or indirectly, on the sufficiency of the Bank's assertion of its cause of action. Distilled, these arguments assert that due to the erroneous description by the maker of promissory notes in the mortgages, the Bank was required to plead that mistake, prove it, and seek reformation of the mortgages—all within the appropriate limitations period. Appellants contend that the Bank has failed to do so and thus should not be entitled to foreclose the mortgages. We disagree.

We first address the validity of the mortgages. Although appellants do not explicitly state that the mortgages were unenforceable as executed, they focus on the need for reformation of the instruments. Implicit in their argument is the premise that to be enforceable, a mortgage cannot erroneously describe the debt it secures.

Although this question is one of first impression in Nebraska, it has been addressed elsewhere. A number of courts in other jurisdictions have enforced mortgages despite inaccuracies in the description of the underlying debt. In their analyses, these courts often focused on the existence of the debt itself, rather than its description in the mortgage. See, e.g., *Tropicana Shipping, S.A. v. Empresa Nacional "Elcano"*, 366 F.2d 729 (5th Cir. 1966); *In re Spears*, 39 B.R. 91 (Bankr. E.D. Tenn. 1984); *Rogers v. Evans*, 137 Cal. App. 538, 31 P.2d 233 (1934); *E. E. E., Inc. v. Hanson*, 318 N.W.2d 101 (N.D. 1982). Cf. *Matter of Charter Executive Center Ltd.*, 34 B.R. 131 (Bankr. M.D. Fla. 1983). Moreover, some mortgages have been held enforceable if, by extrinsic evidence or other parts of the instrument, the debt sought to be secured may be accurately identified. See, *E. E. E., Inc., supra*; *Rogers, supra*; *Thompson v. Cobb*, 95 Tex. 140, 65 S.W. 1090 (1902). See, also, *Tropicana Shipping, S.A., supra*. We too have emphasized the importance of the debt, noting that the promissory note is the primary contract or obligation, and the mortgage an incident thereto. *A-1 Finance Co., Inc. v. Nelson*, 165 Neb. 296, 85 N.W.2d 687 (1957).

Finding the preceding cases persuasive, we hold that despite certain inaccuracies in its description of the debt it secures, a mortgage may still be enforceable. Turning to the facts of this case, we further hold that notwithstanding the erroneous description in the Bank's mortgages, the instruments were enforceable.

In the space provided for describing the debt, the two mortgages stated that $1,235,000 would be payable according to two promissory notes of the Myerses, which were due on September 7, 1984, and August 22, 1985. As previously noted, no such notes had been signed by the Myerses. However, based on the other information contained in the debt description and the information adduced at trial, it is clear which debt the mortgages were intended to secure. The Partnership had previously signed two promissory notes to the Bank, which were due on September 7, 1984, and August 22, 1985, and created a combined debt of $1,235,000. Those notes were later renewed by the Partnership, and one of the renewed versions,

which was attached to the Bank's petition, stated that it was secured by the August 1984 mortgage. Furthermore, the parties could not have been misled into thinking that the mortgages actually secured personal debts of the Myerses—at the time of the mortgages, only Adair had a personal debt with the Bank, in the amount of approximately $49,000. Finally, Adair admitted that the Myerses had to "put up the real estate" to obtain more credit *for the Partnership*.

The trial court specifically found that the mortgages were intended to secure the Partnership's notes. We agree. Despite the mortgages' inaccurate description by the maker of the notes, there was ample evidence to indicate which debt the parties intended to be secured. As such, the mortgages were enforceable in their form as attached to the petition.

Although we hold that the erroneous description in these mortgages did not render them unenforceable, we leave for another day the question of how much error would be too much. We note, however, that situations may arise where the party who makes such an inaccurate description may be precluded from enforcing the instrument. See *Gurske v. Strate*, 165 Neb. 882, 87 N.W.2d 703 (1958) (implying that the equitable rights associated with reformation may be altered where a third-party purchaser without notice relies on the original instrument).

Having determined that the mortgages were enforceable, we easily dispose of the appellants' assignments of error which relate to reformation. Because the mortgages were enforceable, they did not need to be reformed. Reformation did not need to be pled, and the limitations period for reformation did not apply. Appellants' arguments otherwise are without merit.

Nor do we find merit in the arguments that the Bank failed to properly plead its cause of action and that the court erred by allowing the Bank to conform its pleadings to the proof. Specifically, appellants argue that the Bank "did not plead reformation and did not plead liability of the defendants Adair Myers, Arden Myers and Edith Myers on any cause of action other than personal execution of the two notes." Brief for appellants at 20. Having already disposed of appellants' argument regarding reformation, we turn to the second portion

of their argument.

Neb. Rev. Stat. § 25-852 (Reissue 1989) permits the court to conform the pleadings to the facts proved when "the amendment does not change substantially the claim or defense." The decision to allow such an amendment rests with the discretion of the trial court and will not be error unless prejudice resulted. *Thomas v. Marvin E. Jewell & Co.*, 232 Neb. 261, 440 N.W.2d 437 (1989); *Collection Associates, Inc. v. Eckel*, 212 Neb. 607, 324 N.W.2d 808 (1982). "Prejudicial error results when a pleading is allowed to be amended where the amendment changes the issues and affects the quantum of proof as to any material fact." *Id.* at 609, 324 N.W.2d at 809-10. Accord *Thomas, supra.*

Although the Bank's petition erroneously alleged that the Myerses had executed the original notes, it correctly stated that the notes had been renewed by the Partnership. It also stated that the notes were secured by the mortgages which, as we have previously discussed, adequately described the debt. Finally, the petition included copies of both the mortgages and the renewed Partnership's notes. The petition sufficiently indicated that the Myerses' mortgages were being foreclosed because the mortgages were intended to secure the Partnership's debt. Amendment of the petition to correct the erroneous allegation did not change the issues; it only clarified the factual scenario leading up to the foreclosure. We cannot say that the Myerses suffered prejudice by the amendment of the pleadings. We thus dispose of appellants' arguments relating to the sufficiency of the Bank's pleadings.

Appellants next argue that the district court erred by determining that despite the Partnership's discharge in chapter 12 bankruptcy, the mortgages remained a valid lien. Appellants assert that (1) the Partnership debt had been restructured, had been discharged, and was being repaid pursuant to the debtor's plan, and therefore, the debt was extinguished; (2) a mortgage cannot exist without a debt; and (3) a mortgage cannot be foreclosed absent a default. They conclude that either the mortgage has been released or, if it remains, the Bank cannot foreclose because the Partnership is in compliance with the debtor's plan. We address these contentions in order.

There is simply no support for appellants' first contention, that the debt has been extinguished and that therefore the mortgage has been released. Under the Bankruptcy Code, 11 U.S.C. § 524 (1988) provides, in relevant part:

> (a) A discharge in a case under this title—
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination *of the personal liability of the debtor* with respect to any debt discharged under section . . . 1228 . . . of this title . . . .
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*
>
> . . . .
>
> . . . .
>
> (e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor *does not affect the liability of any other entity on, or the property of any other entity for, such debt.*

(Emphasis supplied.)

Based on the emphasized language, it is clear that the Bank retains its lien against the real estate. Only the Partnership was involved in the bankruptcy; thus, only it received a discharge. Moreover, the real estate, which was owned by the Myerses, was not property of the debtor. The Myerses, who pledged land as security for the debt of the Partnership, received no discharge. The property remained pledged as security for the note; the underlying debt was not extinguished. See *In re Lembke,* 93 B.R. 701, 702 (Bankr. D.N.D. 1988) ("a discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability which, by virtue of [§] 524(a)(2) bars its enforcement against him. The debt still exists, however, and can be collected from any other entity that might be liable"). See, also, *In re Western Real Estate Fund, Inc.,* 922 F.2d 592 (10th Cir. 1990), *modified, Abel v. West,* 932 F.2d 898 (1991); *United States v. Stribling Flying Service,* 734 F.2d 221 (5th Cir. 1984); *In re Fasse,* 40 B.R. 198 (Bankr. D. Colo. 1984); *Arkansas Real Estate Comm'n v. Veteto,* 303 Ark. 475, 798 S.W.2d 52 (1990).

We also note that the court handling the Partnership's bankruptcy ruled similarly on this issue. In an order released prior to the confirmation of the Partnership's debtor's plan, the U.S. Bankruptcy Court for the District of Nebraska found, among other things:

> The individual owners of the real estate [the Myerses] are not in bankruptcy. Their assets and obligations securing partnership debt are not subject to this proceeding. . . . In this case, the Bank has a secured claim to the extent of the value of the non-real estate assets. It is unsecured on the balance. *However, this does not affect Bank's* [*sic*] *rights with regard to claims against individual partners or against the real estate.*

(Emphasis supplied.)

Nor is there any merit to appellants' argument that the Partnership's compliance with its debtor's plan cured the default on the notes. Pursuant to its amended debtor's plan submitted after the journal entry which included the above-quoted language, the Partnership's plan proposed to repay only that portion of the debt secured by the Partnership's chattel assets. Thus, the confirmation of that plan precluded only an action by the Bank to recover debt secured by those assets. The plan did not, however, propose to repay any amount of the debt secured by the Myers' real estate. Therefore, despite the Partnership's compliance with its debtor's plan, the Bank was free to pursue its claim against the real estate. The bankruptcy court came to the same conclusion in its journal entry. The portion of the debt secured by the real estate had not been restructured pursuant to the Partnership's debtor's plan and thus remained in default.

As previously noted, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Myerses' real estate remains pledged as security for the debt via the mortgage and is not relieved of that encumbrance simply because the Partnership has complied with its debtor's plan. Cf., *In re Western Real Estate Fund, Inc., supra; Stribling Flying Service, supra.*

Appellants argue that the Bank has failed to meet its burden

of proof because it has not shown a default. See *West Town Homeowners Assn. v. Schneider*, 231 Neb. 100, 435 N.W.2d 645 (1989). As our discussion has indicated, we disagree. The breach of terms of the promissory notes secured by the land was not cured under the Partnership's debtor's plan; contrary to appellants' arguments, there has been a default. The district court did not err by ruling that despite the Partnership's discharge, the mortgages could be foreclosed.

Appellants next argue that the district court erred in determining that collateral estoppel was not pled and therefore was not applicable. We agree on one point—allegations of collateral estoppel were included in appellants' second amended answer. However, we do not agree that collateral estoppel is applicable.

In their second amended answer, appellants asserted that the Bank was collaterally estopped from claiming that the Myerses are individually liable on the promissory notes because during the bankruptcy, the Bank "knowingly and deliberately maintained the position that the debt was incurred solely by [the Partnership] and that all benefits inured to [the Partnership] alone." The pleading further alleged that the Bank is collaterally estopped on the issue because it agreed to the debtor's plan and the restructuring of the Partnership's debt. In their brief, appellants argue that collateral estoppel applies because in its pleadings the Bank "continuously maintained the position that the promissory notes involved were individually signed by the [Myerses] and that the debt was that of the [Myerses] as individuals." Brief for appellants at 30. Each argument is incorrect.

We have previously delineated four conditions that must exist for the doctrine of collateral estoppel to apply:

(1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

(Emphasis omitted.) *State on behalf of J.R. v. Mendoza*, 240 Neb. 149, 154, 481 N.W.2d 165, 169 (1992).

When viewed with these conditions in mind, it becomes apparent that collateral estoppel does not apply to the case at bar. First, the Bank's statements in the pleadings of this action cannot work as a bar; there has not been the requisite prior action. Furthermore, as we have already discussed and as was determined by the bankruptcy court, the liability of the Myerses as individuals was not adjudicated in the bankruptcy proceeding. As such, the first requirement of collateral estoppel—prior adjudication of an identical issue—has not been met. The doctrine is thus inapplicable to this case.

The district court reached a similar finding in its order when referring to res judicata. Although collateral estoppel properly denotes the conclusive effect of a judgment with regard to specific issues, *Petska v. Olson Gravel, Inc., ante* p. 568, 500 N.W.2d 828 (1993), the court did not err in refusing to apply the doctrine. Appellants' argument to the contrary is without merit.

We thus turn to appellants' final argument, that the district court erred by ordering the Partnership to pay the debt within 20 days or the mortgages would be foreclosed. To an extent, we agree with appellants; the district court should not have "directed and ordered" the Partnership to pay the Bank. Such an order clearly violates the discharge that the Partnership received in bankruptcy. However, it seems equally clear that the court's statement was not made with the intention of violating the discharge order.

As our previous discussion has indicated, the Bank adequately pled and proved a cause of action for foreclosure. The district court so held. In its order, the court apparently was giving the defendants an opportunity to redeem by paying the judgment amount. Such action was permissible; only the wording of the order was improper.

The district court did not err by foreclosing the mortgages and ordering the sale of the property if the Bank was not paid the amount due it. We affirm the district court's decision on all issues raised by appellants, except that we modify the court's order by removing that portion which ordered the Partnership to pay the debt due the Bank. The order should simply state that if the Bank is not paid the amounts due it within 20 days, the

mortgages will be foreclosed and the property sold.

We now turn to the Bank's cross-appeal. The Bank contends that the court erred by (1) not appointing a receiver and (2) not foreclosing Maxine's alimony lien and valuing it in the amount of past-due alimony payments.

Under Neb. Rev. Stat. § 25-1081(2) (Reissue 1989), "[a] receiver *may* be appointed by . . . the district court . . . in an action for the foreclosure of a mortgage, when the mortgaged property is in danger of being lost, removed, or materially injured, or is probably insufficient to discharge the mortgage debt." (Emphasis supplied.) The district court found that the mortgaged property was probably insufficient to pay the debt. However, the court reasoned that there had been no evidence shown as to the rights of the Partnership in a lease, the expected income from the property, the total rights and duties of the Partnership under the bankruptcy debtor's plan, the separation of income between the property subject to Maxine's superior lien, and other facts necessary for the designation of the receiver's duties. The court thus denied the Bank's request for appointment of a receiver.

Whether a receiver should be appointed in conjunction with a mortgage foreclosure action is a matter within the discretion of the trial court. On appeal, that decision will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Federal Land Bank of Omaha v. Victor*, 232 Neb. 351, 440 N.W.2d 667 (1989). See *O'Neill Production Credit Assn. v. Putnam Ranches, Inc.*, 198 Neb. 145, 251 N.W.2d 884 (1977).

In its brief, the Bank notes that the Partnership's debt exceeded the appraised value of the real estate, a point recognized by the district court. The Bank then cites us to a number of cases in which a debt was similarly undersecured and this court affirmed the granting of a receiver. Concluding, the Bank argues that the district court erred by failing to appoint the requested receiver. We do not agree.

Contrary to the Bank's argument, the key factor in our past affirmance of receiver appointments was not that the debt was undersecured; rather, it was the fact that the district court had determined that a receiver was appropriate. The hallmark of

these opinions was our deference to the district court, deference clearly mandated by the language of § 25-1081(2). This theme has been continually reflected in our decisions:

> In the appointment of a receiver, especially in a foreclosure case, very much must be left to the discretion of the district judge, and unless it is made to appear that this discretion has been exercised unwisely and to the injury of the party complaining, this court will not interfere.

*Jacobs v. Gibson*, 9 Neb. 380, 382, 2 N.W. 893 (1879). See, also, *Federal Land Bank of Omaha, supra*; *O'Neill Production Credit Assn., supra*; *Lackey v. Yekel*, 113 Neb. 382, 203 N.W. 542 (1925).

Based on the record before us, we again defer to the district court. We cannot say that the court's decision to deny the appointment of a receiver was an abuse of discretion. In spite of the undersecured debt, the record contains no evidence as to those matters which gave the court concern. Without such evidence, we are unable to conclude that the court's decision was unwise or that the Bank was injured. We will not disturb the court's ruling on the request.

We conclude by addressing the Bank's argument that Maxine's alimony lien should have been valued based on past-due amounts and foreclosed. In its decree, the district court ruled that Maxine's alimony lien was a superior lien on the Red Willow County real estate for both past and future alimony payments. The court valued the lien at $35,621 as of September 1, 1990, reflecting the amount in arrears at that time. However, the court further ruled that based on the evidence presented, the future value of the lien was indeterminable. The court thus held that Maxine's lien could not be foreclosed without her consent, but permitted the property to be sold subject to the lien.

The Bank first contends that Maxine bore the burden of proving the amount of her lien. Based on that premise, it argues that the evidence is insufficient to support the court's valuation of past-due alimony, and because Maxine did not present sufficient evidence to enable the amount of her future lien to be valued, she has lost the future lien.

To determine the merit of these arguments, we must first

determine the relative priorities of the parties' liens. Maxine's lien arose from a divorce decree which was entered August 16, 1979, in the district court for Red Willow County. Apparently, the judgment was never transcribed to Hitchcock County. The Bank's Red Willow County mortgage was recorded August 30, 1984. It is undisputed that Maxine has priority to all alimony that was in arrears as of that date.

With regard to the priority of Maxine's lien for the period following the execution of the mortgage, we have addressed similar questions on numerous occasions. In *Action Realty Co., Inc. v. Miller*, 191 Neb. 381, 385-86, 215 N.W.2d 629, 632 (1974), we stated: "The lien of a judgment for child support or alimony constitutes a lien the same as other monetary judgments and is a lien not only for past due installments but also as security for installments to fall due in the future." See, also, *McCord v. McCord*, 128 Neb. 230, 258 N.W. 474 (1935); *Lynch v. Rohan*, 116 Neb. 820, 219 N.W. 239 (1928). Moreover, we have also stated:

> "[U]nder the statutes of this state, a judgment in favor of the wife for [a set alimony allowance per] month for her maintenance for an indefinite period is a lien upon the real estate of the husband for all amounts due and to become due under such decree, and will have priority over the lien of a judgment subsequently rendered against the husband."

*McCord*, 128 Neb. at 237, 258 N.W. at 477 (quoting *Lynch, supra*, and applying the preceding rule to a mortgagee who sought priority over the holder of an alimony lien). Cf. *Action Realty Co., Inc., supra* (holding that child-support liens have priority over subsequent encumbrances for all installments due or to become due).

Based on the foregoing language, it would seem that our inquiry is over and that Maxine has priority. However, each of the above-cited decisions applied statutory law that has since been repealed and replaced. (*Action Realty Co, Inc.* cites statutory provisions from both before and after the statutory changes. Although it is somewhat unclear which law the opinion relied upon, it is immaterial to our decision.) We thus must determine whether the new law requires a new rule.

Although *Action Realty Co., Inc.*, *McCord*, and *Lynch* relied on slightly different versions of the applicable statutes, the relevant statutory language stayed approximately the same and provided:

"All judgments and orders for payment of alimony or of maintenance in actions of divorce or maintenance shall be liens upon property in like manner as in other actions, and may in the same manner be enforced and collected by executions and proceedings in aid thereof, or other action or process as other judgments." . . . "Judgments and decrees for alimony or maintenance shall be liens upon the property of the husband, and may be enforced and collected in the same manner as other judgments of the court wherein they are rendered."

(Emphasis omitted.) *Action Realty Co., Inc.*, 191 Neb. at 387, 215 N.W.2d at 632 (quoting Neb. Rev. Stat. §§ 42-319 and 42-323 (Reissue 1943)). Accord, *McCord, supra* (applying like language from Comp. Stat. §§ 42-319 and 42-323 (1929)); *Lynch, supra* (applying like language from Comp. Stat. §§ 1534 and 1538 (1922)).

In 1972, the Legislature repealed Neb. Rev. Stat. §§ 42-301 to 42-340 (Reissue 1943) and enacted substitute legislation. See 1972 Neb. Laws, L.B. 820. The pertinent statutory provisions provide: "Orders and judgments for temporary or permanent support or alimony shall be filed with the clerk *and have the force and effect of judgments when entered . . . .*" (Emphasis supplied.) Neb. Rev. Stat. § 42-369(4) (Cum. Supp. 1992). "*All judgments and orders for payment of money shall be liens, as in other actions*, upon real property and any personal property registered with any county office and may be enforced or collected by execution and the means authorized for collection of money judgments." (Emphasis supplied). Neb. Rev. Stat. § 42-371(1) (Cum. Supp. 1992).

Nothing in the present statutes indicates that the rule from our previous decisions on this issue should change. As the emphasized language indicates, the present statutes maintain the theme of their precursors: Alimony judgments continue to be liens. As such, if they precede a mortgage and are of record, they have priority over that mortgage. *Naudain v. Fullenwider,*

72 Neb. 221, 100 N.W. 296 (1904); Neb. Rev. Stat. § 25-1504 (Reissue 1989). See, also, *Omaha Loan & Bldg. Assn. v. Turk*, 146 Neb. 859, 21 N.W.2d 865 (1946); Neb. Rev. Stat. § 76-238.01 (Reissue 1990).

Pursuant to the Red Willow County divorce decree, Maxine's lien attached to the Red Willow County land on August 16, 1979. See § 25-1504. Her lien thus preceded, and has priority over, the mortgage—both as to past and future installments. See, *McCord v. McCord*, 128 Neb. 230, 258 N.W. 474 (1935); *Lynch v. Rohan*, 116 Neb. 820, 219 N.W. 239 (1928). Were we to hold that only *arrears* have priority, it would go against the clear intent of the statutes. Unlike the majority of judgments, alimony and support awards are necessarily forward-looking. Such is the case here. Maxine received a judgment entitling her to monthly alimony until she dies or remarries. That judgment is a statutorily declared lien on the property within the county, for all amounts due or to become due. See, §§ 42-369 and 42-371; *McCord, supra*. Cf. *Action Realty Co., Inc. v. Miller*, 191 Neb. 381, 215 N.W.2d 629 (1974).

We realize that when reaching our decision in *Lynch*, we relied, in part, on the portion of the then-existing statutes which stated that alimony was a lien "upon the property of the husband" as a basis for our determination that the lien maintained priority with regard to future alimony debts. Although that language was not made part of the present statutory scheme, we do not believe it changes the result. Sections 42-369 and 42-371 combine to provide that orders and judgments for alimony and support shall be liens. It is irrelevant that the statutes no longer single out one gender as the bearer of such a burden.

Having determined that Maxine's lien has priority over the mortgages, we must address the Bank's contention that she failed to meet her burden of proof. The Bank, as a junior lienholder, could foreclose Maxine's lien only with her consent. See, *Osage Oil & Refining Co. v. Mulber Oil Co.*, 43 F.2d 306 (10th Cir. 1930) (applying Oklahoma law); *Military Academy v. Dockery*, 244 N.C. 427, 94 S.E.2d 354 (1956). See, also, Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 7.14

(2d ed. 1985). Cf. *Missouri, Kansas & Texas Trust Co. v. Richardson*, 57 Neb. 617, 78 N.W. 273 (1899). While we have held that a senior lienholder may be made a party to a foreclosure action to determine the priority and amount of his or her lien, see *id.*, those factors have been established here. The record contains adequate evidence to support the district court's $35,621 valuation of the alimony arrearage. Furthermore, the record also contains a copy of Maxine's divorce decree, which sets out the alimony payments due her until her death or remarriage. The record also indicates that Maxine is, in fact, alive and unmarried. Contrary to the Bank's contentions, Maxine does not lose her lien because she did not reduce its amount to present value.

We note that had it wished first priority at the time it sought the mortgages, the Bank could have requested that Maxine release her lien. See § 42-371(1) (Reissue 1984). Had she refused to grant a release, the Bank might have sought relief from the district court, perhaps posting bond to ensure payment of the judgment. See § 42-371(4) (Reissue 1984). However, because the Bank failed to conduct a title search before acquiring the mortgages, it took neither of the aforementioned precautions. It should not be heard to complain now. The Bank's arguments regarding Maxine's lien are without merit.

We affirm the rulings of the district court which foreclosed the Bank's mortgages on the Myerses' land, subject to Maxine Myers' alimony lien. We also modify the court's decree to the extent it is inconsistent with the discharge given the Partnership. The decree is affirmed in all other respects.

AFFIRMED AS MODIFIED.

LANPHIER, J., participating on briefs.